1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10  PATRIOT RAIL CORP.,
    a Delaware Corporation,
11
                    Plaintiff,                    No. CIV S-09-0009 MCE EFB
12
            vs.
13
    SIERRA RAILROAD COMPANY,
14  a California Corporation,

15                  Defendant.                    ORDER
   _____/
16
   AND RELATED COUNTERCLAIMS
17  _____/

18          This matter was before the court on August 5, 2009, for hearing on: (1) plaintiff's motion

19  to compel production of a document which defendant had inadvertently disclosed and then

20  withdrew from disclosure, Dckt. No. 26; (2) plaintiff's motion to file under seal the unredacted

21  declaration of plaintiff's counsel, Dckt. No. 27; and (3) the request of each party for attorney

22  fees and costs in pursuing and defending these matters.  Lisa Halko, Esq., and Sarah Asplin,

23  Esq., appeared on behalf of plaintiff Patriot Rail Corporation ("Patriot"); and Scott Cameron,

24  Esq., appeared on behalf of defendant Sierra Railroad Company ("Sierra").  After consideration

25  of the moving and opposing papers and the arguments of counsel, and for the reasons that

26  follow, the court denies plaintiff's motions to compel and to file under seal, and denies each

1

1    party request for attorney fees.

2    <u>BACKGROUND</u>

3         This motion address the first three pages of a ten-page document which defendant

4    disclosed.  However, defendant contends that the first three pages (the pages now in dispute) are

5    protected by attorney-client privilege and the work product doctrine.  Copies of these pages were

6    inadvertently disclosed by defendant to plaintiff's counsel but were either returned or destroyed

7    upon notification by defendant of the claim of privilege.  There is no claim of waiver because of

8    the inadvertent disclosure and the defendant appears to have acted timely in correcting the error.

9    Rather, the only dispute is whether the content of three pages are subject to either the attorney-

10    client privilege and/or work product doctrine.  The last seven pages of the document have been

11    fully disclosed and are not in issue.

12         On April 1, 2009, plaintiff Patriot Rail Corporation propounded its Request for

13    Production, Set Two, upon defendant Sierra Railroad Company.  Request Number One sought

14    "[a]ll documents and other tangible things illustrating Defendant's relationship and

15    communications with McClellan Business Park."  Defendant produced relevant documents the

16    morning of June 4, 2009, immediately prior to plaintiff's deposition of Michael Hart, President

17    of Sierra.  After commencement of the deposition, during the lunchbreak, plaintiff's counsel

18    reviewed the newly produced documents, including a ten-page document responsive to the

19    above-noted production request, identified as Bates Number SRR 6786-6795.  The document

20    generally describes Sierra's business relationship with third party McClellan Business Park

21    ("MCP" or "McClellan").  When the deposition resumed, plaintiff's counsel, Lisa Halko, asked

22    Mr. Hart about the document.  Mr. Hart responded initially, but defendant's counsel, Mr.

23    Gonzalez, objected on the ground of inadvertent disclosure, stating that the first three pages,

24    Bates Number SRR 6786-88, were drafted by Mr. Torgny Nilsson, Sierra's in-house counsel,

25    and subject to attorney-client privilege.  Plaintiff thereafter destroyed its copies of the disputed

26    pages.

On June 9, 2009, defendant provided a privilege log, Ex. E to Halko Decl., which provides the following information as to the assertion a attorney client privilege:

| Date | Doc. Type/ Bates No. | Author | Recipient | Description | Privilege |
|---|---|---|---|---|---|
| Undated | SRR 006786- SRR 006788 | T. Nilsson | M. Hart, T. Nilsson and Sierra Railroad management team | Summary of Sierra Railroad's operations at McClellan Park and opinions of T. Nilsson re. same | Attorney-Client Privilege; Attorney Work Product Doctrine |

Plaintiff filed this motion on June 16, 2009. On July 13, 2009, the court ordered defendant to produce the disputed pages for *in camera* review. The court deferred consideration of plaintiff's motion to file under seal the unredacted declaration of plaintiff's counsel, but directed that "[t]he parties may share the unredacted document pursuant to the provisions of their protective order approved by the district judge on May 21, 2009." Dckt. No. 28.

Defendant timely submitted the disputed pages on July 16, 2009, and the court has reviewed them *in camera*. On July 29, 2009, the parties filed their joint statement addressing this narrow discovery dispute.

Defendant's in-house counsel, Mr. Torgny Nilsson, filed a declaration in support of defendant's assertions of privilege, in which he states that he is, and "at all relevant times was, the General Counsel for Sierra Railroad Company and its subsidiaries Sierra Northern Railway and Sierra Entertainment." Nilsson Decl., Dckt. No. 32, at p. 1. Mr. Nilsson states that he wrote the disputed pages for the purposes of providing legal advice and in anticipation of possible litigation with McClellan,[1] and describes these circumstances as follows:

> ¶ 2. I prepared the first three pages of the document entitled "Sierra Benefits to MCP," which is now Bates labeled SRR 6786 through SRR 6788, when it became apparent that a dispute, which might lead to litigation, was arising between Sierra Northern Railway and the management of McClellan Business Park concerning

---

[1] While the document does not bear a date, and Mr. Nilsson does not provide one, Mr. Hart testified that he believed the document was written mid-2007.

3

Sierra Northern Railway's operation of the railroad facilities at McClellan Business Park.

¶ 3.  In order for me to provide upper management at Sierra Northern Railway and Sierra Railroad Company with the best analysis of the arising dispute, and in order to decide the best course of action if and when that dispute led to litigation, I obtained information from those people in our company involved in obtaining and overseeing Sierra Northern Railway's operations at McClellan Business Park as to the history of Sierra Northern Railway's operations at McClellan Business Park, the benefits Sierra Northern Railway had brought to McClellan Business Park, and the arguments that might be made by both McClellan Business Park and Sierra Northern Railway in the event of any litigation.  I also analyzed the potential merits and drawbacks of the arguments that might be made and the potential impact of those arguments.

¶ 4.  I at all times considered the document to be privileged as it was prepared in anticipation of litigation and its distribution was limited to those of Sierra's upper management who had a need to know the information so that they could best direct my actions in the growing dispute with the management of McClellan Business Park and in any resulting litigation.  I am informed and believe that the document was never, prior to the instant litigation with Patriot, provided to anyone other than Mike Hart, President of Sierra Railroad Company, and David Magaw, Vice-President of Sierra Railroad Company and President of Sierra Northern Railway.  In the document, I attempted to play "devil's advocate" by presenting what I anticipated would be McClellan Business Park's side of the growing dispute in an effort to communicate to Sierra's senior management the issues that were involved in the dispute.

¶ 5.  I provided the document to the firm of Weintraub Genshlea Chediak, Sierra Railroad Company's counsel in the instant litigation with Patriot, as the document appeared to be responsive to Patriot's request for the production of documents in conjunction with Mike Hart's deposition.  But at the time I did so, I believed the document to be protected by the attorney-client privilege and I did not expect the document to be produced to Patriot.  The fact that the documents were prepared in addressing a potential growing dispute with McClellan Business Park, rather than Patriot, did not, in my opinion, in any way affect the privileged nature of the documents in the litigation with Patriot.

Nilsson Decl., at pp. 2-3; *see also* Jt. Stmt. at 14.

Plaintiff responds that the "dominant purpose" test should control the court's analysis of defendant's asserted privilege, and that the dominant purpose of the disputed document was to provide business, not legal, advice.  According to plaintiff, the document, including the three pages in issue, were prepared in the ordinary course of business, rather than in anticipation of litigation, and that plaintiff has a substantial need for the document because the information

1   contained therein (in particular, information upon which to impeach the testimony of Mr. Hart

2   regarding the true nature of defendant's relationship with McClellan) cannot be obtained

3   elsewhere.

4   DISCUSSION

5       "The party asserting attorney-client privilege has the burden of establishing all of the

6   elements of the privilege." *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).  "[T]he

7   essential elements of the attorney-client privilege [are]:  (1) [w]here legal advice of any kind is

8   sought, (2) from a professional legal adviser in his capacity as such, (3) the communications

9   relating to the purpose, (4) made in confidence (5) by the client, (6) are at this instance

10  permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the

11  protection be waived." *Admiral Ins. v. United States District Court for District of Arizona*, 881

12  F.2d 1486, 1492 (9th Cir. 1989).  "[B]ecause the privilege has the effect of withholding relevant

13  information from the fact-finder, it applies only where necessary to achieve its purpose." *Fisher*

14  *v. United States*, 425 U.S. 391, 403 [] (1976); *United States v. Gray*, 876 F.2d 1411, 1415 (9th

15  Cir. 1989) (the privilege is 'narrowly and strictly construed').  Nevertheless, the attorney client

16  privilege, once properly asserted, is absolute.  *See Westinghouse Elec. Corp. v. Republic of the*

17  *Philippines*, 951 F.2d 1414, 1429, (3d Cir. 1991)."  *Modesto Irrigation District v. Gutierrez*,

18  2007 WL 763370, 13 (E.D. Cal. 2007).

19      In contrast, "[t]he work product doctrine, codified in Federal Rule of Civil Procedure

20  26(b)(3), protects 'from discovery documents and tangible things prepared by a party or his

21  representative in anticipation of litigation.' *Admiral Ins. Co. v. United States District Court*, 881

22  F.2d 1486, 1494 (9th Cir.1989).  Such documents may only be ordered produced upon an

23  adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in

24  obtaining] the substantial equivalent of the materials by other means.' Fed. R. Civ. P. 26(b)(3)."

25  *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 906

26  (9th Cir. 2004).  However, such weighing of interests does not apply to work product containing

1    an attorney's mental impressions and opinions, which remain inviolate.  *See Admiral Ins. Co.,*

2    *supra,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing *Upjohn v. United States,* 449 U.S. 383, 401

3    (1981) (work product doctrine accords special protections against disclosing an attorney's mental

4    impressions and opinions, but "other work-product materials nonetheless may be ordered

5    produced upon an adverse party's demonstration of substantial need or inability to obtain the

6    equivalent without undue hardship"); *see also Hickman v. Taylor,* 329 U.S. 495, 511-512

7    (1947).[2]

8         The "'dominant purpose' test," on which plaintiff relies, was well summarized by the

9    California Court of Appeal, Fourth District, in *2,022 Ranch, L.L.C. v. Superior Court*, 113

10   Cal.App.4th 1377, 1390-1395 (4th Dist. 2003).  The court explained:

11        In certain instances it is difficult to determine if the attorney-client privilege (or
          work product privilege) attaches to a communication, particularly where there
12        may be more than one purpose for that communication:  Where it is clear that the
          communication has but a single purpose, there is little difficulty in concluding
13        that the privilege should be applied or withheld accordingly.  If it appears that the
          communication is to serve a dual purpose, one for transmittal to an attorney in the
14        course of professional employment and one not related to that purpose, the
          question presented to the trial court is as to which purpose predominates.  This
15        "dominant purpose" test not only looks to the dominant purpose for the
          communication, but also to the dominant purpose of the attorney's work.  Thus,
16        the attorney-client privilege would not apply without qualification where the
          attorney was merely acting as a negotiator for the client, or merely gave business
17        advice, or was merely acting as a trustee for the client.

18

19        [2] As set forth in *Hickman v. Taylor,* 329 U.S. 495, 511-512 (1947):

20        We do not mean to say that all written materials obtained or prepared by an
          adversary's counsel with an eye toward litigation are necessarily free from
21        discovery in all cases.  Where relevant and non-privileged facts remain hidden in
          an attorney's file and where production of those facts is essential to the
22        preparation of one's case, discovery may properly be had.  Such written
          statements and documents might, under certain circumstances, be admissible in
23        evidence or give clues as to the existence or location of relevant facts.  Or they
          might be useful for purposes of impeachment or corroboration. And production
24        might be justified where the witnesses are no longer available or can be reached
          only with difficulty.  Were production of written statements and documents to be
25        precluded under such circumstances, the liberal ideals of the deposition-discovery
          portions of the Federal Rules of Civil Procedure would be stripped of much of
26        their meaning.

6

1   *2,022 Ranch, supra,* 113 Cal.App.4th at 1390-1391 (citations and internal quotations omitted).

2       The court's *in camera* review supports the declaration of Mr. Nilsson.  The document,

3   including the three pages in question, demonstrates that its purpose was to provide legal advice.

4   The disputed pages were written by Mr. Nilsson in his capacity as in-house counsel for

5   defendant Sierra Railroad Company, during a period of conflict between Sierra and McClellan

6   Business Park.  The document was directed to Sierra management, and addressed the parameters

7   of Sierra's contract with McClellan and Sierra's obligations thereunder.  The document was

8   disclosed in confidence, and was not further disclosed except for its inadvertent disclosure to

9   plaintiff.  Given the legal purpose and content of the document, and its preparation by Sierra's

10  in-house counsel for management's eyes only, defendant's assertion of attorney-client privilege

11  was proper and should be upheld.

12      Defendant's inadvertent disclosure did not effect a waiver of the attorney-client privilege.

13  Courts commonly consider five factors to evaluate waiver of privilege by inadvertent disclosure:

14  "(1) the reasonableness of the precautions taken against disclosure; (2) the time taken to rectify

15  the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding

16  issue of fairness."  *In re Sause Bros. Ocean Towing*, 144 F.R.D. 111, 115 (D. Or. 1991)

17  (citations omitted).  The court's consideration of these factors demonstrates that, while greater

18  precautions could initially have been taken to protect the document, disclosure was minimal, the

19  scope of information contained therein was narrow, and the error was immediately rectified;

20  defendant's quick efforts to secure and protect the document render its continued protection a

21  fair result.  Thus, based on the relevant factors, the court finds no waiver of the attorney-client

22  privilege by inadvertent disclosure.

23      Plaintiff's remaining arguments seek to overcome defendant's subsequent assertion of

24  work product protection.  While the contested document was prepared in the midst of a growing

25  dispute between Sierra and McClellan, a dispute relevant to the instant litigation, it cannot

26  reasonably be said that the document was prepared in anticipation of litigation.  Rather, the

1   document provides legal advice in the ordinary course of business, and is therefore not subject to

2   work product protection.[3]   Nonetheless, the disputed pages remain protected pursuant to the

3   attorney-client privilege.

4        Finally, plaintiff has filed an application fo file under seal the declaration of Lisa L.

5   Halko.  The sealing order is sought because the declaration describes or characterizes the

6   disputed three pages.  The court finds no compelling reason to file Ms. Halko's declaration,

7   whether redacted or unredacted, and therefore denies plaintiff's application for a sealing order.

8   Plaintiff's motion does not meet the requisite elements for sealing, a procedure narrowly tailored

9   to protect highly confidential information.  The court appreciates counsel's sensitivity to the

10  privilege issue and the efforts to avoid divulging defendant's privileged information.  However,

11  the information contained in, and attached to, Ms. Halko's declaration, does not appear to

12  actually disclose the contents of the disputed pages.  Nor does it appear to be the type of

13  information that is traditionally kept confidential, and plaintiff has not demonstrated a

14  compelling reason that it be sealed.  *See Kamakana v. City and County of Honolulu*, 447 F.3d

15  1172, 1178-79 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th

16

17      [3] *See, e.g.*, *QST Energy, Inc. v. Mervyn's*, 2001 WL 777489, 5 (N.D. Cal. 2001):

18  The threshold inquiry is whether the material was prepared in anticipation of
    litigation.  *Reavis v. Metropolitan Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 162

19  (S.D. Cal. 1987).  If "but for" the litigation, the document would not have been
    prepared, then the document is work product; if the document was prepared in the

20  ordinary course of business, regardless of any litigation, it is not work product.
    *See, e.g., First Pac. Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 582

21  (N.D. Cal. 1995) (communications between client or its counsel and insurance
    carrier not protected when the documents would have been prepared independent

22  of any litigation); *Fox v. California Sierra Fin. Serv.*, 120 F.R.D. 520, 528-529
    (N.D. Cal. 1988) (legal opinion letters regarding securities offering that defendant

23  was required to provide not prepared in anticipation of litigation).  While
    litigation need not have already commenced, "there must be more than a remote

24  possibility of litigation." *Conner Peripherals v. Western Digital Corp.*, 1993 WL
    726815 at *4 (N.D. Cal. June 8, 1993). The protection applies "if the prospect of

25  litigation is identifiable because of specific claims that have already arisen." *Id.*
    The test is whether "the document can fairly be said to have been prepared or

26  obtained because of the prospect of litigation." *Id.* (citations omitted).

Cir. 2003).  Moreover, the parties have had full access to Ms. Halko's declaration pursuant to

their protective order.  The court's rulings herein are based not on the contents of Ms. Halko's

declaration, but on the contents of the disputed document itself, pursuant to the court's *in camera*

review, as well as Mr. Nilsson's declaration regarding the purpose and preparation of the

document, and the arguments of counsel in their consolidated joint statement and at the hearing

on this matter.  Therefore plaintiff's application for a sealing order is denied and the Clerk of

Court is directed to return the materials lodged with that application to Ms. Halko.

The requests of both parties for fees and costs are denied based on the court's conclusion

that the positions of both parties were reasonable.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to compel production of the three-page document withheld by

defendant based on attorney-client privilege, and identified as Bates Number SRR 6786-88,

Dckt. No. 26, is DENIED;

2.  The Clerk of Court is directed to return to defendant's counsel the court's copy of the

document identified as Bates Number SRR 6786-88, submitted for *in camera* review on July 16,

2009.

3.  Plaintiff's motion to file under seal the unredacted declaration of plaintiff's counsel,

Dckt. No. 27, is DENIED;

4.  The Clerk of Court is directed to return to plaintiff's counsel the court's copy of Ms.

Halko's declaration submitted *in camera* pursuant to her motion, Dckt. No. 27; and,

5.  The request of each party for attorney fees and costs in pursuing and defending these

matters is DENIED.

SO ORDERED.

DATED:  September 11, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE