UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PATRIOT RAIL CORP., a                    No. 2:09-cv-00009-MCE-EFB
Delaware Corporation,

          Plaintiff,

     v.                                  **MEMORANDUM AND ORDER**

SIERRA RAILROAD COMPANY,
a California corporation,

          Defendant.

_____

And Related Counterclaim.

                         ----oo0oo----


     As a result of its ultimately unsuccessful attempt to
purchase a short-line rail company from Defendant Sierra Railroad
Company ("Sierra"), Plaintiff Patriot Rail Corporation
("Patriot") seeks monetary damages through the present action
under various theories, including breach of contract, breach of
the implied covenant of good faith and fair dealing, fraud, and
unfair competition.
///

1

1   Sierra, in turn, by way of counterclaim seeks damages from
2   Patriot under the same theories, and further asserts additional
3   claims premised on intentional and negligent interference with
4   prospective economic advantage, misappropriation of trade
5   secrets, and coercion.  Sierra also seeks damages from Cross-
6   Defendant Larry Coe ("Coe"), a Patriot employee, under all the
7   same theories except breach of contract, and breach of the
8   implied covenant of good faith and fair dealing.

9       Presently before the Court is Patriot and Coe's Motion for
10  Summary Judgment as to Sierra's counterclaim.  Patriot and Coe
11  alternatively seek summary adjudication as to particular issues.
12  For the reasons set forth below, the Motion for Summary Judgment
13  as to the case as a whole will be denied.  The alternative
14  request for summary adjudication is denied in part and granted in
15  part.[1]

16
17                          **BACKGROUND**
18
19      This case arises out of a dispute between two railroad
20  companies who were in negotiations aimed at the apparent
21  purchase, by Patriot, of Sierra's business.  Sierra is a smaller
22  company operating its short-line railroads solely within Northern
23  California, whereas Patriot is a larger concern that purchases
24  and operates short-line railroads and regional freight railroads
25  throughout the United States and North America.
26

27      [1] Because oral argument was not of material assistance, this
28  matter was deemed suitable for decision on the briefs.  See
    Eastern District Local Rule 230(g).

                                  2

1    It is undisputed that the parties began sales negotiations

2  in 2005.  The parties disagree about who pursued the acquisition

3  opportunity and initiated discussions concerning a proposed sale.

4  In connection with the potential acquisition, a non-disclosure/

5  confidentiality agreement ("NDA") was entered into by the parties

6  later that same year.  The NDA was intended among other things to

7  protect the confidential and trade-secret information of Sierra,

8  while allowing a free flow of information to Patriot.

9    During the course of these negotiations, Sierra had an

10  ongoing short-term contract, renewed yearly, for the provision of

11  rail services to McClellan Business Park ("McClellan") in

12  Sacramento County, California.  Sierra was seeking a long-term

13  contract with McClellan by 2007, and introduced Patriot as a

14  potential buyer that could fund what was necessary to expand its

15  operations on the McClellan site.  Sierra asked Patriot to assist

16  in its presentation to McClellan, and Patriot agreed.  During

17  this process, Sierra asserts it provided significant confidential

18  information to Patriot.

19    After Sierra introduced Patriot to McClellan, the three

20  parties met to discuss the long-term contract sought by Sierra.

21  In August 2007, Patriot met with McClellan alone.  Sierra claims

22  it was not advised of that meeting.  Sierra contends that while

23  Patriot did indicate to Sierra, following the meeting, that it

24  intended to draft its own proposal to submit to McClellan, it

25  assured Sierra that this merely constituted an alternate proposal

26  to increase the chance that as a group they would secure the

27  desired long-term contract.

28  ///

3

1   Approximately three days after this discussion, and two
2   weeks after the private meeting with Patriot and McClellan,
3   McClellan gave notice to Sierra that it was terminating its lease
4   and starting a new Request for Proposal Process (RFP) for a
5   long-term contract.  McClellan told Sierra it would be considered
6   along with three other bidders.  According to Sierra, it did not
7   know the identity of the other bidders at that time.  Sierra
8   alleges that Patriot never informed Sierra that it was selected
9   as one of the other three companies in contention.  Around this
10  same time, in September 2007, Patriot sent a Stock Purchase Offer
11  to Sierra, with a provision reconfirming the effectiveness of the
12  NDA.  Patriot then proceeded to file its own RFP response with
13  McClellan.

14  In January of 2008, McClellan informed Sierra that it had
15  selected Patriot for its long-term contract.  In March 2008,
16  Sierra filed suit against Patriot alleging the claims that are in
17  its current counterclaim.  Following institution of that lawsuit,
18  however, the parties apparently agreed to attempt to continue
19  buyout negotiations, and Sierra accordingly dismissed its
20  complaint without prejudice.  At this time, the parties entered
21  into a Letter of Intent ("LOI") that proposed buyout terms while
22  at the same time clarifying that there was no binding obligation
23  to actually consummate the transaction as described.  The LOI
24  nonetheless provided that sections 3(a)-3(e) of the agreement
25  were binding on the parties.  Section 3(c) is of particular
26  importance to Sierra as it reiterated that the Confidentiality
27  Agreement between Patriot and Sierra remained in full effect.
28  ///

4

1   During the course of the negotiations, each party alleges

2   the other was acting unreasonably and purposefully delaying the

3   negotiations.   In December of 2008, both parties seemed to be

4   nearing a final agreement.   According to Patriot, however, Sierra

5   rejected its offer without discussion or negotiation.   Sierra on

6   the other hand, claims Patriot substantially changed the terms of

7   the agreement finally submitted to Sierra, and thereby

8   effectively negated all previous negotiations leading up to the

9   December offer.   This led both parties to inform each other of

10  their intention to file suit.   Patriot got to court first, and

11  Sierra quickly responded with its own counterclaim against

12  Patriot.   This led to the Motion now before the Court for

13  consideration.

14

15                          **STANDARD**

16

17      The Federal Rules of Civil Procedure provide for summary

18  judgment when "the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with

20  affidavits, if any, show that there is no genuine issue as to any

21  material fact and that the moving party is entitled to a judgment

22  as a matter of law." Fed. R. Civ. P. 56(c). One of the principal

23  purposes of Rule 56 is to dispose of factually unsupported claims

24  or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

25  ///

26  ///

27  ///

28  ///

5

1    Rule 56 also allows a court to grant summary adjudication on

2  part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party

3  seeking to recover upon a claim ... may ... move ... for a

4  summary judgment in the party's favor upon all or any part

5  thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp.

6  374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter

7  Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).  The

8  standard that applies to a motion for summary adjudication is the

9  same as that which applies to a motion for summary judgment. See

10  Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp.

11  2d. 1192, 1200 (S.D. Cal. 1998).

12    Under summary judgment practice, the moving party always

13  bears the initial responsibility of informing the district court

14  of the basis for its motion, and identifying those portions of

15  "the pleadings, depositions, answers to interrogatories, and

16  admissions on file together with the affidavits, if any," which

17  it believes demonstrate the absence of a genuine issue of

18  material fact.  Celotex Corp. v. Catrett, 477 U.S. at 323

19  (quoting Rule 56(c)).

20    If the moving party meets its initial responsibility, the

21  burden then shifts to the opposing party to establish that a

22  genuine issue as to any material fact actually does exist.

23  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

24  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

25  253, 288-89 (1968).

26  ///

27  ///

28  ///

1   In attempting to establish the existence of this factual

2   dispute, the opposing party must tender evidence of specific

3   facts in the form of affidavits, and/or admissible discovery

4   material, in support of its contention that the dispute exists.

5   Fed. R. Civ. P. 56(e). The opposing party must demonstrate that

6   the fact in contention is material, i.e., a fact that might

7   affect the outcome of the suit under the governing law, and that

8   the dispute is genuine, i.e., the evidence is such that a

9   reasonable jury could return a verdict for the nonmoving party.

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

11  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

12  Workers, 971 F.2d 347, 355 (9th Cir. 1987).

13  Stated another way, "before the evidence is left to the

14  jury, there is a preliminary question for the judge, not whether

15  there is literally no evidence, but whether there is any upon

16  which a jury could properly proceed to find a verdict for the

17  party producing it, upon whom the onus of proof is imposed."

18  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14

19  Wall. 442, 448, 20 L. Ed. 867 (1872)). As the Supreme Court

20  explained, "[w]hen the moving party has carried its burden under

21  Rule 56(c), its opponent must do more than simply show that there

22  is some metaphysical doubt as to the material facts.... Where the

23  record taken as a whole could not lead a rational trier of fact

24  to find for the nonmoving party, there is no 'genuine issue for

25  trial.'" Matsushita, 475 U.S. at 586-87.

26  ///

27  ///

28  ///

1    In resolving a summary judgment motion, the evidence of the
2    opposing party is to be believed, and all reasonable inferences
3    that may be drawn from the facts placed before the court must be
4    drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.
5    In judging evidence at the summary judgment stage, the court does
6    not make credibility determinations or weigh conflicting
7    evidence.  <u>See</u> <u>T.W. Elec. v. Pacific Elec. Contractors Ass'n</u>,
8    809 F.2d 626, 630-631 (9th Cir. 1987), citing <u>Matsushita Elec.</u>
9    <u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).
10   Nevertheless, inferences are not drawn out of the air, and it is
11   the opposing party's obligation to produce a factual predicate
12   from which the inference may be drawn.  <u>Richards v. Nielsen</u>
13   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
14   aff'd, 810 F.2d 898 (9th Cir. 1987).

15
16                              **ANALYSIS**
17   **A.   Breach Of Contract**
18
19   "In a breach of contract claim under California law, a
20   plaintiff must allege (1) a contract, (2) plaintiff's
21   performance, (3) defendant's breach, and (4) damages."  <u>Lyons v.</u>
22   <u>Coxcom, Inc.</u>, 718 F. Supp. 2d 1232, 1237 (9th Cir. 2009).  "Two
23   basic prerequisites for contract formation are the existence of
24   mutual consent and terms that are sufficiently definite so that
25   the performance promised is reasonably certain."  <u>Schwarzkopf v.</u>
26   <u>Intern. Business Machines, Inc.</u>, 2010 WL 1929625, 5 (9th Cir.
27   2010) citing <u>Weddington Productions, Inc. v. Flick</u>, 60 Cal. App.
28   4th 793, 811 (1998).

1    "A contract must be so interpreted as to give effect to the
2  mutual intention of the parties as it existed at the time of
3  contracting, so far as the same is ascertainable and lawful."
4  Cal. Civ. Code § 1636. "When a contract is reduced to writing,
5  the intention of the parties is to be ascertained from the
6  writing alone, if possible; subject, however, to the other
7  provisions of this title." Cal. Civ. Code § 1639.  If the terms
8  of a contract are unambiguous, no obligation may be enforced that
9  would result in a right being lost by a party given expressly
10 under the contract.  See Thrifty Payless, Inc. v. Mariners Mile
11 Gateway, LLC, 185 Cal. App. 4th 1050, 1062 (2010).  Where a
12 writing of an intent to purchase contains language contemplating
13 that the parties may not conclude the agreement to purchase, and
14 where language excusing obligation is written into the agreement,
15 the parties are not contractually bound to go forward with the
16 purchase.  See J.B. Enterprises Intern., L.L.C. v. Sid and Marty
17 Krofft Pictures Corp., 2003 WL 21037837, 3 (9th Cir. 2003).
18     The issue now before the court is whether the LOI was a
19 valid and enforceable contract.  Patriot asserts that the
20 language of 3(f) in the LOI specifically excuses both parties
21 from an obligation to complete the transaction.  Section 3(f)
22 states in pertinent part as follows:

23        "Except with respect to paragraphs (3)a - 3(e) above,
          this letter is not intended to be, and shall not be, a
24        binding contract.  Your acceptance of the general
          principles set forth in this letter shall not
25        constitute an agreement to consummate the Transaction
          described herein.  Such an agreement will be contained
26        only in the Asset or Stock Purchase Agreement, nor
          shall this letter constitute an agreement to enter into
27        an Asset or Stock Purchase Agreement."

28 ///

1   Sierra asserts that Patriot is precluded from denying the
2   enforceability of the LOI because Patriot alleged in both its
3   original Complaint and First Amended Complaint that this
4   agreement was binding, and breached by Sierra.  Sierra relies on
5   American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226
6   (9th Cir. 1988), to make its argument in that regard.  Patriot
7   points out two reasons, however, why this reliance is flawed.

8        First, Lacelaw held only that where an issue of fact would
9   normally be in dispute, "judicial admissions are formal
10  admissions in the pleadings which have the effect of withdrawing
11  a fact from issue and dispensing wholly with the need for proof
12  of the fact." Id. at 226.  Here, the LOI contained unambiguous
13  language.  The language of 3(f) explicitly negates any obligation
14  of the parties to make the LOI a binding purchase agreement.  If
15  the language of the contract was ambiguous, and extrinsic
16  evidence was necessary to determine the two parties' intentions
17  in the formation of the contract, then this would require a
18  determination of fact which could be admitted to in the
19  pleadings.  However, when a contract is reduced to writing, the
20  intention of the parties is to be ascertained from the writing
21  alone where possible.  No additional fact need be determined, and
22  the writing of the LOI speaks for itself.

23       Second, Lacelaw unequivocally states that "factual
24  assertions in the pleading and pretrial orders, unless amended,
25  are considered judicial admissions conclusively binding." Id.
26  (emphasis added).

27  ///
28  ///

Patriot's First Amended Complaint, while still acknowledging that
some provisions in the LOI are binding, nonetheless corrects its
earlier assertion that the agreement is binding in its entirety.
Therefore, even if the Court considers any admission on the part
of Patriot, it must do so in light of the First Amended
Complaint.  Patriot has only admitted as binding the limited
provisions contained in paragraphs 3(a)-3(e) of the LOI.  This
does not contradict the plain language of the agreement, and the
same determination can be ascertained from the writing alone.

Therefore, regarding the narrow issue of whether there could
have been a breach of the LOI agreement simply because Patriot
failed to acquire Sierra by its terms, summary adjudication is
granted inasmuch as the LOI does not constitute a binding
purchase agreement.  Summary adjudication is not extended to the
rest of Sierra's breach of contract claim, however, including
whether the NDA or binding provisions of the LOI were breached.
Sierra has presented triable issues of fact that must be
considered in assessing whether any breaches occurred in those
areas.

Sierra points to evidence that Patriot's bid, in response to
McClellan's RFP, contained information that it knew to include
only because Patriot had seen Sierra's bid.  See Sierra's Opp'n
to Mot. Summ. J., pp. 11-12, ECF No. 131 ("Opp'n").  This
information was allegedly gained through Sierra's confidential
long-term relationship with McClellan.  Id.  Sierra further
points to the fact that the other two bidders' proposals looked
markedly different.  Id. at 12.
///

Sierra asserts that Patriot's bid was much more similar to Sierra's than the other two bidders, and was the only one other than its own to have an offer to invest in the McClellan infrastructure. Id. at 14. Sierra contends the offer to invest was not a requirement, and would only be included if the bidder understood its importance to McClellan, which it could only have known from intimate knowledge gained from McClellan and Sierra's past business relationship. Id. Patriot had obtained this type of information through its relationship with Sierra, and Sierra asserts that is why it knew, unlike the other bidders, to include this as part of its response. Id. at 12. While Patriot asserts that such evidence is purely speculative, (see Patriot's Reply to Opp'n to Mot. Summ. J., p. 9, ECF No. 143 ("Reply")) the non-moving party may overcome a summary judgment motion by referencing evidence, even if in inadmissible form, as long as it is possible for the party to later present the same evidence in admissible form at trial. Colony Holdings, Inc. v. Texaco Refining and Marketing, Inc., 2001 WL 1398403 at * 5 (9th Cir. 2001). At the very least, the bids themselves would be admissible as evidence, so regardless of the evidence referenced by Sierra it would be inappropriate to rule against Sierra at this juncture as a matter of law.

Patriot, for its part, points to evidence tending to explain how it independently arrived at the decision to include this information. Reply, p. 8. However, neither side offers undisputed evidence, and a genuine issue of material fact remains.

///

12

1   Each party has simply provided evidence that tends to support its

2   own contention.   Therefore, summary adjudication as to whether

3   the NDA was breached is not appropriate.

4        Sierra also claims that Patriot had no intention of entering

5   into the 2008 LOI at the time of its creation.   This is relevant

6   to a breach of contract claim, because a LOI implies that there

7   was at least an obligation that Patriot have the <u>intent</u> to

8   purchase Sierra when forming the agreement, even if no agreement

9   for purchase was ever concluded.   "Under limited circumstances,

10  the court may find that a contract includes an implied term or

11  covenant.   To effectuate the intent of the parties, implied

12  covenants will be found if after examining the contract as a

13  whole it is so obvious that the parties had no reason to state

14  the covenant, the implication arises from the language of the

15  agreement, and there is a legal necessity."   <u>Britz Fertilizers,</u>

16  <u>Inc. v. Bayer Corp.</u>, 665 F. Supp. 2d 1142, 1165 (9th Cir. 2009).

17  From the language of the contract and the purpose of its

18  creation, it appears clear that there is an implied covenant that

19  Patriot have the <u>intent</u> to purchase Sierra, even though it was

20  not bound to do so if an agreement as to the terms was never

21  made.   Sierra has pointed to evidence that could lead a trier of

22  fact to find that this implied covenant was breached or

23  frustrated.

24  ///

25  ///

26  ///

27  ///

28  ///

First, Sierra references Patriot's response to McClellan's RFP, where Patriot named Crouch Engineering as the group it would work with to assist with railroad construction. Opp'n, p. 18. Sierra had the ability to do railroad construction in house at a profit, and it argues that if Patriot had an intent to purchase Sierra it would have named Sierra instead. <u>Id</u>. Patriot asserts that because the 2007 negotiations had ended, it included Crouch since Sierra had rejected Patriot's September offer to purchase, and this was therefore not demonstrative of any intent to mislead Sierra. Reply, p. 4. However, whether the parties were still in negotiations is not an undisputed fact from the record. Sierra contends that Patriot made representations to Sierra at the time it was submitting a separate proposal with McClellan Park, indicating the proposal was meant to be a functional equivalent of a second proposal by Sierra in order to double the odds of the duo getting the long-term contract. Opp'n, p. 4. This suggests that the two were in continuing negotiations during the time this bidding process was going on. Even though Sierra would reject one offer by Patriot, it does not necessarily follow that both parties were no longer in negotiations. At least Sierra was under the belief that during the bidding process Patriot had every intention of buying it out. Therefore, it is feasible that evidence of Patriot naming another party besides Sierra in its bid proposal could lead a trier of fact to find Patriot already lacked intent to acquire Sierra before it drafted the 2008 LOI.

///

///

///

14

For the reasons above, and viewing the evidence in the light most favorable to the non-moving party, it is not appropriate to grant summary adjudication as to the breach of contract claim as a whole, but rather only as to the limited question of whether a breach occurred because Patriot did not buy out Sierra based on the terms in the LOI.  Therefore, for the claim that Patriot breached the LOI by failing to buy Sierra out on the terms of the LOI, summary adjudication is granted, and for all other questions as to whether a breach of contract occurred regarding either the LOI or the NDA, summary adjudication is denied.

**B.   Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

"In every contract, the law implies a covenant of good faith and fair dealing.  The implied promise requires that the contracting parties must refrain from engaging in any act that will injure the rights of the other to receive the benefits of the agreement."  <u>Trinity Hotel Investors, LLC v. Sunstone OP Properties, LLC</u>, 2009 WL 303330 at * 11 (9th Cir. 2009).

> "To properly allege a breach of the covenant, plaintiffs' allegations must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."

<u>Id</u>.

///

///

1    As previously discussed, although the LOI is not a binding
2    purchase agreement, it is binding in some respects, including
3    implied provisions that are obvious by the nature of the
4    document, such as an implied intent to purchase at the time of
5    formation.  While an implied covenant of good faith and fair
6    dealing must not contradict the express covenants or purpose of
7    the agreement, breach of an express covenant is not a
8    prerequisite for breach of an implied covenant of good faith and
9    fair dealing.  See Berger v. Home Depot U.S.A., Inc.,
10   476 F. Supp. 2d 1174, 1177 (9th Cir. 2007).  The purpose of the
11   LOI agreement between Sierra and Patriot was to attempt to
12   negotiate a buyout transaction of Sierra, to which there is an
13   implied intent at the formation of the agreement to carry through
14   with such transaction.

15   As discussed above, Sierra has offered evidence that there
16   was no such intent by Patriot at the time the agreement was made.
17   Sierra has also offered evidence that may lead a trier of fact to
18   find that Patriot had breached the terms of the NDA, which
19   Patriot reacknowledged was effective in the binding provisions of
20   the LOI.  Viewing that evidence in the light most favorable to
21   the non-moving party could lead a trier of fact to find that
22   Patriot consciously and deliberately frustrated the purpose of
23   the LOI.  Therefore, summary adjudication is denied as to whether
24   there was a breach of the implied covenant of good faith and fair
25   dealing.
26   ///
27   ///
28   ///

16

1    **C.    Misappropriation Of Trade Secrets**

2

3        A trade secret may consist of any formula, pattern, device

4    or compilation of information which is used in one's business,

5    and provides an opportunity to obtain an advantage over

6    competitors who do not know or use it.   Walker v. University

7    Books, Inc., 602 F.2d 859, 865 (9th Cir. 1979).   An exact

8    definition of a trade secret is not possible.   Some factors to be

9    considered in determining whether given information constitutes a

10   trade secret are: (1) the extent to which the information is

11   known outside the business of the person or entity claiming a

12   trade secret; (2) the extent to which it is known by employees

13   and others involved in the business; (3) the extent of measures

14   taken by him to guard the secrecy of the information; (4) the

15   value of the information to the person or entity as well as to

16   its competitors; (5) the amount of effort or money expended in

17   developing the information; (6) the ease or difficulty with which

18   the information could be properly acquired or duplicated by

19   others.  Id.

20       Patriot asserts various reasons why a trier of fact could

21   not find any misappropriation, by Patriot, of Sierra's trade

22   secrets.  First, Patriot claims that the opportunity to bid on

23   the McClellan contract was not a trade secret simply because

24   Sierra provided the initial introduction between Patriot and

25   McClellan.

26   ///

27   ///

28   ///

1    Secondly, Patriot claims that McClellan's RFP was not

2    confidential information as it was made public, and its use was

3    unrestricted.  Finally, Patriot asserts that Sierra has no

4    evidence, even after discovery, beyond mere speculation, that

5    Patriot's response included any trade secret information.

6         Sierra does not take issue with the first two contentions,

7    and instead premises its trade secrets claim on the provision of

8    confidential information within Patriot's bid proposal.  As

9    already mentioned, Sierra references evidence of similarities

10   between Sierra's and Patriot's bids, and asserts that Patriot's

11   bid contained this similar information only because Patriot had

12   seen Sierra's bid, and knew of particular confidential

13   information gathered by Sierra during its long-term relationship

14   with McClellan.  Opp'n, pp. 11-12.  Sierra contends this is

15   further supported by the fact that none of the other bids

16   contained such information.  <u>Id.</u>  Sierra's bid proposal, along

17   with materials used to prepare the bid, could fit the definition

18   of a trade secret.  Similarities of important and non-obvious bid

19   information could lead a trier of fact to find that Sierra's

20   trade secret information was misappropriated in Patriot's

21   preparation of its bid proposal to McClellan.  Therefore, summary

22   adjudication as to Sierra's claim for misappropriation of trade

23   secrets is denied.

24   ///

25   ///

26   ///

27   ///

28   ///

1      **D.    Intentional And Negligent Interference With Prospective**
       **Economic Advantage**

2

3          The tort of negligent interference with prospective economic

4   advantage is established where a plaintiff demonstrates that

5   (1) an economic relationship existed between the plaintiff and a

6   third party which contained a reasonably probable future economic

7   benefit or advantage to plaintiff; (2) the defendant knew of the

8   existence of the relationship and was aware or should have been

9   aware that if it did not act with due care its actions would

10  interfere with this relationship and cause plaintiff to lose in

11  whole or in part the probable future economic benefit or

12  advantage of the relationship; (3) the defendant was negligent;

13  and (4) such negligence caused damage to plaintiff in that the

14  relationship was actually interfered with or disrupted and

15  plaintiff lost in whole or in part the economic benefits or

16  advantage reasonably expected from the relationship.  Young v.

17  Fluorotronics, Inc., 2010 WL 4569996 at * 6 (9th Cir. 2010)

18  citing Venhaus v. Shultz 155 Cal. App. 4th 1072, 1078 (2007).

19         The tort of intentional interference with prospective

20  economic advantage requires allegations of the following

21  elements: (1) a valid contract between plaintiff and a third

22  party; (2) defendant's knowledge of this contract;

23  (3) defendant's intentional acts designed to induce a breach or

24  disruption of the contractual relationship; (4) actual breach or

25  disruption of the contractual relationship; (5) defendant

26  committed an act that is wrongful independent of the interference

27  itself, and (6) resulting damage.  Id. at * 5.

28  ///

19

"As a matter of law, a threshold causation requirement exists for maintaining a cause of action for either tort, namely, proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." <u>Youst v. Longo</u>, 43 Cal. 3d 64, 71 (1987).

Patriot disputes the causation element of each claim, stating that Patriot did not cause any damage because all of the evidence indicates that Sierra would have lost the McClellan contract in the 2007 RFP regardless of whether Patriot had won. <u>See</u> Patriot's Mot. for Summ. J., pp. 14-15, ECF No. 108 ("Mot."). Patriot's assertion to that effect is primarily based upon the declaration of Larry Kelley. Kelley opines that Sierra lost its original contract due to poor performance. <u>See</u> Decl. of Larry Kelley, pp. 4-5, ECF No. 108-3.[2] He further indicates that even if Patriot had not been chosen, the contract likely would have been awarded to another bidder, and not Sierra. <u>Id.</u> at 8.

As Sierra argues in response, however, McClellan's senior management team never ranked the bids, and Kelley only spoke as to his own particular opinion on the matter. <u>Id.</u> Sierra also points to conflicting evidence provided by Frank Myers in his deposition. <u>See</u> Opp'n, p. 14. Myers testified that the reason for cancelling Sierra's first contract was not due to poor performance. Myers Dep., July 13. 2010, 141:23-142:6.

---

[2] The Court acknowledges that certain evidentiary objections have been interposed by both parties. Unless specifically discussed within the body of this Memorandum and Order, the subject matter of those objections were not necessary to the Court's rulings and consequently no ruling on the objections is necessary. To the extent the disputed evidence was deemed relevant and discussed herein, any related objections are hereby overruled.

1   Myers also testified that Sierra had as good a chance as any for

2   winning the bid, and actually was expected to have a home court

3   advantage.  Id. at 110:1-25.  Myers further expressed his belief

4   that Sierra's proposal appeared the strongest behind Patriot's,

5   and of the other two bids remaining at least one was out of the

6   running.  Id. at 134:10-135:14.

7       Patriot argues that this evidence is nonetheless unimportant

8   because, as even Myers concedes, Larry Kelley is the final

9   decision maker, and can ultimately make any decision he chooses.

10  Id. at 209:3-210:6.  According to Myers, however, it is not

11  customary for Kelley to override a group decision.  Id.  Further,

12  Kelley himself is careful to indicate in his declaration that the

13  senior management team did not rank any bids besides Patriot's,

14  and states clearly that it was only his opinion that Sierra would

15  not have been the runner-up behind Patriot.  Kelley Decl., p. 8.

16      Given all the above, the Court concludes that Sierra has

17  pointed to evidence allowing the jury to find that it was

18  reasonably probable that but for Patriot's bid, Sierra could have

19  been chosen by the senior management board as having the best

20  proposal.  A trier of fact could also find that it was reasonably

21  probable based upon normal practice that Kelley would not have

22  overridden a finding of the board, and thus, Sierra could have

23  secured the bid despite Kelley's personal opinion to the

24  contrary.  Therefore, summary adjudication is denied as to the

25  claims of intentional and negligent interference with prospective

26  economic advantage.

27  ///

28  ///

1    **E.    Fraud**

2

3        In a contractual relationship, fraudulent intent must often

4    be demonstrated by circumstantial evidence, which can be inferred

5    from circumstances surrounding the defendant, or even failure to

6    attempt performance.  <u>Locke v. Warner Bros., Inc.</u>, 57 Cal. App.

7    4th 354, 368 (9th Cir. 1997).  When a triable issue of fact

8    remains as to whether a breach of contract occurred, it is

9    generally not appropriate to summarily adjudicate a fraud claim

10   based around the contract or its terms.  <u>See</u> <u>id.</u> at 367 (Where

11   the appeals court stated "a triable issue exists as to whether

12   Warner breached the agreement with Locke. Therefore, the trial

13   court's rationale for disposing of the fraud claim is

14   undermined.")

15       There is a triable issue of fact as to whether a contract or

16   implied covenant of the agreement between the parties was breached

17   as previously discussed.  Since summary adjudication was not

18   proper in determining the breach of contract claim, it is also

19   inappropriate to award summary adjudication on a claim of fraud.

20   Summary adjudication is accordingly denied as to this matter.

21

22   **F.    Coercion**

23

24       Merriam Webster defines the term "coerce" as the act of

25   compelling an act or choice.  Economic duress applies when a

26   party acts wrongfully in a way sufficiently coercive to cause a

27   reasonably prudent person, when faced with no reasonable

28   alternative, to agree to an unfavorable contract.

1   CrossTalk Productions, Inc. v. Jacobson, 65 Cal. App. 4th 63, 644

2   (1998).   The purpose of asserting this claim is to invalidate an

3   otherwise valid contract.   See Aulakh v. 7-Eleven, Inc., 2006 WL

4   224398 at * 6 (9th Cir. 2006).

5        Sierra asserts that Patriot used coercive means to attempt

6   to induce Sierra into agreeing to a particular transaction.   The

7   key word here, however, is attempt.   No transaction ever occurred

8   because Sierra never agreed to Patriot's terms.   Therefore,

9   coercion is not a proper basis for relief as there is not a

10  contract to invalidate.   Summary adjudication on this matter is

11  accordingly granted.

12

13       **G.   Unfair Competition**

14

15       Sierra asserts claims of unfair competition, pointing both

16  to the California Business and Professions Code and to common law

17  standards.   "The privilege of competition is limited by the

18  nature of things by a legal standard of fairness to the method of

19  competition and the motive of the competitor.   Any abuse of the

20  privilege is the basis for imposing liability.   Standards change

21  as public policy changes with reference to competition in

22  business as business is modified by social and economic

23  conditions; however, deception has always been and is now

24  recognized as bad conduct."   Southern California Disinfecting Co.

25  v. Lomkin, 183 Cal. App. 2d 431, 446 (1960).

26  ///

27  ///

28  ///

23

According to California law, unfair competition means any
unlawful, unfair or fraudulent business act or practice and
unfair, deceptive, untrue or misleading advertising and any act
prohibited by Chapter 1 (commencing with Section 17500) of Part 3
of Division 7 of the Business and Professions Code. <u>Cal. Bus. &
Prof. Code § 17200</u>.   A practice may be unfair or deceptive
without being unlawful, or vice versa. <u>Smith v. Chase Mortg.
Credit Group</u>, 653 F. Supp. 2d 1035, 1043 (9th Cir. 2009).
"Virtually any federal, state, or local law can serve as a
predicate for an action under section 17200." <u>Id</u>. Misappropriation
of a trade secret claim can itself provide a basis for an unfair
competition claim. <u>Competitive Technologies v. Fujitsu Ltd.</u>,
286 F. Supp. 2d 1118, 1152 (9th Cir. 2003).

    Patriot asserts that any indication it provided to Sierra of
its intent to file a lawsuit cannot be the basis of an unfair
competition claim. Mot., p. 18.  Sierra asserts in its
opposition to the motion that Patriot's claim in that regard is
misplaced since the unfair competition claim is based instead on
Patriot's misappropriation of trade secret information, as well
as bad faith tactics during the failed negotiation transaction.
Opp'n, p. 15.  While Patriot's assertion is true that simply
letting a party know that it intended to file suit is not proof
of unfair competition, this alone is not what supports Sierra's
unfair competition claim.  As indicated above, Sierra has
identified facts that could enable a jury to find in Sierra's
favor on its claims for misappropriation of trade secrets, fraud,
breach of the implied covenant surrounding the formation of the
LOI and the negotiation proceedings.

Summary adjudication is improper for an unfair competition claim where the underlying claims on which it is based remain viable. Summary adjudication is accordingly denied on the unfair competition claim.

**H.   Claims Asserted Against Larry Coe**

In cases involving intentional misrepresentation or fraud, an employee or agent may be individually responsible for the commissions of that tort. See McNeill v. State Farm Life Ins. Co., 116 Cal. App. 4th 597 (2004). Patriot contends that because Coe only dealt with entertainment passenger operations, and did not have any involvement in the McClellan RFP, he cannot be individually responsible for the claims being asserted here by Sierra.

In response, however, Sierra points to evidence that it was Coe's misleading statements that induced Sierra to provide Coe with confidential information that he then passed along to others at Patriot. Opp'n, pp. 18-19. Sierra also provides evidence that Coe was consistently interacting with Patriot, even if his job was primarily to assess Sierra's entertainment operations. Id. Patriot asserts, in response, that it never had any intention of buying that portion of Sierra's operation, as evidenced by the fact that the LOI did not address the entertainment component as a possible target for acquisition. Reply, p. 10. Patriot further maintains that Coe was not in any authority to suggest to Sierra that it would explore that acquisition. Id.
///

1    It has already been determined, however, that the LOI

2 section referenced by Patriot is non-binding, and that the terms

3 contained therein could have been changed at any time before

4 purchase.  Moreover, the question remains as to why Coe

5 apparently continued to deal with Sierra if Patriot never had any

6 intention of buying the operations in which Coe was involved.

7 Sierra and Patriot both agree that the tourist operations of the

8 railroad had been losing money.  See Opp'n, p. 19; Reply, p. 10.

9 Sierra asserts it had a plan to change the operations in such a

10 way to reduce its losses.  Opp'n, p. 19.  Sierra provides

11 evidence that Coe instructed Sierra not to take any action since

12 taking action could jeopardize the contemplated buyout

13 transaction.  Id.  If Patriot never had an intent to purchase

14 these operations, as it readily admits in its Reply memorandum,

15 and if Coe was aware of this when he made these statements to

16 Sierra and continued to obtain confidential information, Coe

17 could be found personally liable.  Because there is evidence

18 suggesting that Coe may have personally misled Sierra, and may

19 have fraudulently obtained confidential information through such

20 acts, summary adjudication as to this matter is denied.

21

22                          **CONCLUSION**

23

24    Based on the foregoing, Patriot is not entitled to summary

25 judgment as a whole with regard to Sierra's counterclaim in this

26 matter.  Patriot's Motion for Summary Judgment (ECF No. 108) is

27 accordingly DENIED.

28 ///

As set forth above, Patriot's alternative request for summary adjudication is GRANTED in part as to Sierra's Third Claim for Relief, for breach of contract, and further is GRANTED as to Sierra's Eighth Claim for Relief, for coercion.  Patriot's remaining requests for summary adjudication are DENIED.

IT IS SO ORDERED.

Dated: January 31, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE