UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRIOT RAIL CORP., | No. 2:09-cv-00009-TLN-AC |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| SIERRA RAILROAD CO., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

This matter is before the Court on the parties' cross motions. Patriot Rail Corporation and Patriot Rail, LLC filed a motion in limine re punitive damages (ECF No. 453), which Sierra Railroad Co. opposed (ECF No. 454). Sierra then filed a motion for leave to amend its counterclaims (ECF No. 455); Patriot filed a consolidated reply and opposition brief in response (ECF No. 459). The Court heard the parties' oral argument on April 4, 2014, and held an evidentiary hearing to further assess the issues raised in the parties' briefing. The Court then ordered the parties to file supplemental briefs, which the parties did. (Sierra's Supp. Br., ECF No. 464; Patriot's Response Br., ECF No. 467.) The Court has carefully considered the parties' initial briefing, oral argument, the testimony at the hearing, and the supplemental briefing. In light of Patriot's concession that Patriot Rail Company LLC is a continuation of counter-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRIOT RAIL CORP., | No. 2:09-cv-00009-TLN-AC |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| SIERRA RAILROAD CO., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

This matter is before the Court on the parties' cross motions. Patriot Rail Corporation and Patriot Rail, LLC filed a motion in limine re punitive damages (ECF No. 453), which Sierra Railroad Co. opposed (ECF No. 454). Sierra then filed a motion for leave to amend its counterclaims (ECF No. 455); Patriot filed a consolidated reply and opposition brief in response (ECF No. 459). The Court heard the parties' oral argument on April 4, 2014, and held an evidentiary hearing to further assess the issues raised in the parties' briefing. The Court then ordered the parties to file supplemental briefs, which the parties did. (Sierra's Supp. Br., ECF No. 464; Patriot's Response Br., ECF No. 467.) The Court has carefully considered the parties' initial briefing, oral argument, the testimony at the hearing, and the supplemental briefing. In light of Patriot's concession that Patriot Rail Company LLC is a continuation of counter-

defendant Patriot Rail Corporation, the Court DENIES Patriot's motion and GRANTS Sierra's motion IN PART as set forth below.

I. BACKGROUND[1]

A. Brief Procedural Posture

This litigation arises out of a dispute between Patriot Rail Corporation and Patriot Rail, LLC (collectively "Patriot"), on the one hand, and Sierra Railroad Co. ("Sierra") on the other.[2] Sierra operated rail switching services at McClellan Business Park ("McClellan"), a rail-served industrial park in Sacramento County, pursuant to a contract. Patriot and Sierra entered into negotiations for Patriot to acquire Sierra. During negotiations, Sierra provided financial information to Patriot. McClellan terminated its contract with Sierra and after soliciting bids, awarded a contract to Patriot. The parties' negotiations for Patriot to acquire Sierra broke down; this litigation ensued.

The original complaint was filed by Patriot Rail Corporation in December 2008. (ECF No. 2.) Sierra answered and asserted counterclaims against Patriot Rail Corporation and Patriot Rail LLC. (Def.'s Answer, ECF No. 6; Def's Am. Answer, ECF No. 12.) Throughout the case several claims have been dismissed either by the Court upon a party's motion or voluntarily by the parties.[3] At the time of trial, the remainder of Patriot's claims against Sierra were that Sierra committed fraud and breached the binding provisions of the parties' Letter of Intent, entered into in March 2008, for Patriot to acquire Sierra. Patriot also claims that Sierra did not negotiate in good faith and did not intend to complete an acquisition transaction with Patriot.

///

---

[1] The proceedings in this case have been ongoing for several years, and the Court does not endeavor to set forth all of the facts leading up to this point.

[2] At trial the parties stipulated to using "Patriot" to refer to Patriot Rail Corporation and Patriot Rail LLC. (Joint Proposed Jury Instruction No. 2, ECF No. 404 at 4.) Because the Court later discusses the parties' specific business structure, references to "Patriot" will mean both Patriot Rail Corporation and Patriot Rail LLC as stipulated by the parties at trial. Where necessary the Court will refer to Patriot Rail Corporation, Patriot Rail, LLC, and Patriot Rail Company LLC specifically.

[3] For example, Sierra alleged counterclaims against individual Larry Coe, a counter-defendant who has since been dismissed. (Stip. & Order, ECF No. 440.)

2

Sierra claimed that it provided Patriot with confidential and trade secret information during acquisition discussions pursuant to a non-disclosure agreement. Sierra also claims that Patriot falsely represented they would hold Sierra's information in confidence and not use it for any purpose other than Patriot's potential acquisition of Sierra. Sierra alleges that Patriot breached the non-disclosure agreement and misappropriated its information to outbid Sierra for the railroad services contract at McClellan.

**B.    Sierra's Ex Parte Application for a Temporary Restraining Order to Enjoin the Sale of Counter-Defendant Patriot Rail Corporation to SteelRiver**

During the pendency of this litigation, Sierra learned that Patriot Rail Corporation intended to sell itself to SteelRiver Infrastructure Partners ("SteelRiver").[4] On May 14, 2012, Sierra filed an ex parte application for a temporary restraining order to prevent the sale of Patriot Rail Corporation to SteelRiver. (ECF No. 228.) Patriot argued that the Surface Transportation Board ("STB") had exclusive jurisdiction over the transaction, a point that Sierra eventually conceded. Throughout its briefing and oral argument before this Court, Patriot argued that the sale would have no impact on the litigation or Sierra's pending claims. (*See, e.g.*, Opp'n Ex Parte App., ECF No. 231 at 1; Supp. Opp'n, ECF No. 234 at 1–2; Mot. Hr'g Tr., May 31, 2012, ECF No. 242 at 15.) This Court through the Honorable Judge England denied Sierra's ex parte application for a restraining order finding that the STB had exclusive jurisdiction. (ECF No. 242 at 16–19.)

Before the STB, Sierra filed a petition to reject SteelRiver's request to acquire control of Patriot Rail and its subsidiary railroads. Patriot Rail Corporation filed a response to the Petition arguing that the proposed transaction would not affect this litigation or Sierra's ability to recover judgment. (Weed Decl. Ex. I at 24–25, ECF No. 464-1.) The STB ultimately denied Sierra's petition, and the sale to SteelRiver was consummated.

/ / /

---

[4] The transaction would be such that SteelRiver's subsidiary Patriot Funding, LLC would purchase all of the outstanding stock of Patriot Rail Corporation from Patriot Rail Holdings, LLC. (ECF No. 467 at 9:26–27.)

3

### C. Sierra's Motion to Add Parties to its Counterclaims and to Serve Unserved Counter-Defendants

After the Court denied Sierra's ex parte application to enjoin the sale of Patriot Rail Corporation to SteelRiver, Sierra filed a motion for leave to amend its counterclaims seeking to add Pacific Rail LLC, Pacific Rail Holdings LLC and Patriot Funding LLC as new parties. (ECF No. 266.) Sierra further sought to serve unserved counter-defendants Patriot Equity LLC and Patriot Rail Holdings LLC. Patriot filed a response to the motion (ECF No. 274), to which Sierra replied (ECF No. 276) and the Court held a hearing. During oral argument, Patriot's counsel opposed the addition of new parties and opposed the late service of parties who had not been served. However, Patriot did not oppose Sierra's motion to the extent that Sierra sought to substitute an entity who had already been served and in the case. (Mot. Hr'g Tr., ECF No. 309 at 16:20–17:1 ("MS. LOVETT: Your Honor, we do not oppose -- to the extent that there is an entity which is already served and in the case, we do not oppose the substitution that's effectively an FKA [formerly known as]. To the extent [Sierra is] seeking to now serve a new party, or add an entirely new party, which would be the new Patriot entity which is a successor in interest, that's the crux of our opposition.").) This Court through the undersigned denied Sierra's motion without prejudice for the reasons set forth in the memorandum and order entered on July 15, 2013. (ECF No. 298.)

### D. Pretrial Proceedings and Liability Phase of the Trial

The parties filed a joint pretrial statement, which they amended on January 9, 2014. (ECF Nos. 311, 316.) The Court held a final pretrial conference on January 30, 2014. (Minutes, ECF No. 380.) The parties agreed to a bifurcated punitive damages phase in their joint pretrial statement, which the Court confirmed in its final pretrial order. (Final Pretrial Order, ECF No. 384 at 2:11–12 ("Pursuant to the parties' request, the Court shall bifurcate the trial to determine punitive damages, if needed, in a separate proceeding before the same jury.").) No party objected to the final pretrial order.

Jury trial commenced on the liability phase on March 10, 2014, and lasted over two weeks. (Minutes, ECF No. 407.) The jury began their deliberations on March 27, 2014.

(Minutes, ECF No. 439.)  On March 28, 2014, the jury returned a verdict in favor of Sierra on all submitted claims, and awarded compensatory damages in the amount of $22,282,000.  (ECF No. 447.)  The jury also found that Sierra was entitled to punitive damages on several claims.  (ECF No. 447.)

### E. Punitive Damages Phase Commences

After the jury rendered its verdict on liability, the Court ordered the parties to meet and confer with respect to the procedure and scheduling of the punitive damages phase.  The parties agreed to conduct discovery during the week of March 31, and that the parties would present evidence to the jury regarding punitive damages on Friday, April 4, 2014.  Based on the parties' representations, the Court scheduled Friday April 4, 2014, for commencement of the second phase regarding punitive damages.  (Minutes, ECF No. 448.)  No party objected to the proposed punitive damages procedure or schedule.

On April 2, 2014, two days before the punitive damages phase, Patriot filed a motion in limine seeking to exclude any evidence related to any unnamed and unserved parties including an entity named Patriot Rail Company LLC.  (ECF No. 453.)  In that motion, Patriot represented that on May 1, 2013, Patriot Rail Corporation was converted into a Patriot Rail Company LLC, a new entity.  In response Sierra argued that it could not fully respond to the motion in limine filed one day before the punitive damages phase but argued that Patriot Rail Corporation's conversion to Patriot Rail Company LLC did not preclude evidence regarding Patriot Rail Company LLC citing Delaware Code § 266(h) and California Corporations Code § 1158(b)(2) and (3).  (ECF No. 454.)  Sierra also filed a motion for leave to add Patriot Rail Company LLC as a counter-defendant arguing that Patriot Rail Company LLC should be deemed the same entity as Patriot Rail Corporation.  (ECF No. 455.)  Patriot filed a consolidated reply to its motion in limine and opposition to Sierra's motion for leave to amend.  (ECF No. 459.)  In its consolidated reply, Patriot continued to argue that Patriot Rail Corporation and Patriot Rail Company LLC were not the same entity.  (ECF No. 459 at 5:10 ("Sierra argues that Patriot Rail Corp. and New Patriot [Patriot Rail Company LLC] are the same, but that is not the case.").)

///

1    The morning of the scheduled punitive damages phase, April 4, 2014, outside of the
2 presence of the jurors, the parties argued extensively their respective positions in their briefs,
3 which had been filed less than 48 hours before the hearing.  (*See* Minutes, ECF No. 461.)  Out of
4 an abundance of caution, the Court dismissed the jurors for the day and decided to hold a hearing
5 to determine the threshold issues of what evidence should be admitted before the jury with respect
6 to Patriot Rail Company LLC.  The Court heard testimony from two witnesses, Jennifer
7 Whiteman, the Vice President of finance and accounting at Patriot Rail Company LLC, and John
8 Fenton, the President and CEO of Patriot Rail Company LLC.  After hearing testimony, the Court
9 ordered the parties to submit supplemental briefs regarding their pending motions, and
10 specifically whether Patriot Rail Company LLC should be substituted into the case and whether
11 evidence of the financial condition of Patriot Rail Company LLC should be admitted during the
12 punitive damages phase of the trial.  (ECF No. 461.)

13   In its supplemental brief, Sierra reiterated its arguments that Patriot Rail Company LLC
14 was a continuation of Patriot Rail Corporation.  In response, Patriot Rail Corporation changed its
15 previous position and conceded that Patriot Rail Company LLC was in fact a continuation of
16 Patriot Rail Corporation.  (ECF No. 467 at 2:6-7 ("On careful evaluation of the facts and
17 Delaware law, it has become clear that by operation of Delaware law, PRC, LLC [Patriot Rail
18 Company LLC] is in fact a continuation of Patriot Rail Corp.").)  However, Patriot argues that
19 substituting Patriot Rail Company LLC is fundamentally unfair and that imposing punitive
20 damages in this case is contrary to public policy.  (ECF No. 467.)

21 **II.    ANALYSIS**

22   As a threshold matter, the Court finds that the issues raised by the parties' motions, *i.e.*,
23 whether to admit or exclude evidence before the jury, whether to amend the pleadings, whether to
24 substitute a party, whether to amend the final pretrial order, how to proceed in a bifurcated
25 punitive damages proceeding, and whether to impose successor liability are all decisions within
26 the broad and sound discretion of this Court.  *See* Fed. R. Civ. P. 15, 25, 42, 43; Fed. R. Evid.
27 104; *see also Rosales v. Thermex–Thermatron, Inc.*, 67 Cal. App. 4th 187, 196 (1998) ("The
28 determination whether it is fair to impose successor liability involves similarly broad equitable

considerations. We believe the question whether it is fair to impose successor liability is exclusively for the trial court.") (internal citation omitted). Therefore, the undersigned evaluates these motions and makes these findings from the unique perspective of the trial judge who has presided over these proceedings for the last year, including law and motion hearings, the final pretrial conference, and a two-and-a-half week trial on liability.

**A.   Patriot Rail Company LLC is Substituted For Patriot Rail Corporation and Sierra Shall Be Permitted to Introduce Evidence of the Financial Condition of Patriot Rail Company LLC**

Patriot concedes in its supplemental briefing that Patriot Rail Company LLC is a continuation of counter-defendant Patriot Rail Corporation. (ECF No. 467 at 2:6-7 ("On careful evaluation of the facts and Delaware law, it has become clear that by operation of Delaware law, PRC, LLC [Patriot Rail Company LLC] is in fact a continuation of Patriot Rail Corp.").) Delaware law permits a conversion of a domestic corporation to other entities, including a limited liability company. *See* Del. Code Ann. tit. 8, § 266(a) (West 2010) ("A corporation of this State may, upon the authorization of such conversion in accordance with this section, convert to a limited liability company . . . ."). The effect of such a conversion is that the new LLC is deemed to be the same entity as the corporation. Specifically, the statute reads:

> When a corporation has been converted to another entity or business form pursuant to this section, the other entity or business form shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation. When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the corporation that has converted, and all property, real, personal and mixed, and all debts due to such corporation, as well as all other things and causes of action belonging to such corporation, shall remain vested in the other entity or business form to which such corporation has converted and shall be the property of such other entity or business form, and the title to any real property vested by deed or otherwise in such corporation shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of such corporation shall be preserved unimpaired, and all debts, liabilities and duties of the corporation that has converted shall remain attached to the other entity or business form to which such corporation has converted, and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as such other entity

7

> or business form. The rights, privileges, powers and interest in property of the corporation that has converted, as well as the debts, liabilities and duties of such corporation, shall not be deemed, as a consequence of the conversion, to have been transferred to the other entity or business form to which such corporation has converted for any purpose of the laws of the State of Delaware.

Del. Code Ann. tit. 8, § 266(h); *CM Record Corp. v. MCA Records, Inc.*, 168 Cal. App. 3d 965, 967 (1985) ("California law recognizes that the continuing legal existence of a corporation depends on the law state of incorporation."); *see also* Cal. Corp. Code § 1158 (providing for corporate entity conversions under California law).  Therefore, Patriot Rail Company LLC is considered the same entity as Patriot Rail Corporation, who is a party in this case.  Because evidence of a party's financial condition is relevant to determining punitive damages against that party, evidence of Patriot Rail Company LLC's financial condition is relevant to this case.  *See Adams v. Murakami*, 54 Cal. 3d 105, 109 (1991); *see also* Cal. Civ. Code § 3294 (governing punitive damages).

       This analysis is also consistent with Patriot's representation at the June 20, 2013, hearing on Sierra's motion for leave to amend to add new parties and serve unserved counter-defendants.  Although the entity Patriot Rail Company LLC was not specifically at issue at that hearing, Patriot admitted that it would not oppose the substitution of an entity that was merely a change in form.  (Mot. Hr'g Tr., June 6, 2013, ECF No. 309 at 16:20-17:1 ("MS. LOVETT: Your Honor, we do not oppose -- to the extent that there is an entity which is already served and in the case, we do not oppose the substitution that's effectively an FKA [formerly known as]. To the extent [Sierra is] seeking to now serve a new party, or add an entirely new party, which would be the new Patriot entity which is a successor in interest, that's the crux of our opposition.").)  Here, because Patriot concedes that Patriot Rail Company LLC is the same entity as Patriot Rail Corporation and does not argue that Patriot Rail Company LLC is a new or unserved party, the Court finds that it is proper to substitute.  Accordingly, the Court grants Sierra's request to substitute Patriot Rail Company LLC for Patriot Rail Corporation to reflect its conversion to an LLC, and Sierra will be permitted to introduce evidence of Patriot Rail Company LLC's financial condition during the punitive damages phase to the jury.

**B.     Patriot's Arguments that Sierra's Requested Relief is Fundamentally Unfair**

Despite its concession that Patriot Rail Corporation converted from its corporate form to an LLC, Patriot still argues Sierra's requested relief is fundamentally unfair. As set forth below, the Court finds that these arguments lack merit.

Patriot argues that Sierra failed to bring this motion properly under Federal Rule of Civil Procedure 25. (ECF No. 467 at 2.) Rule 25 governs the substitution of parties; subsection (c) states that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)." Rule 25(a)(3) requires a party to serve a motion to substitute along with a notice of hearing on the parties as provided in Rule 5 and on non-parties as provided in Rule 4.

Patriot's argument that Sierra's motion is procedurally deficient lacks persuasive force as both parties admittedly filed last-minute motions on the eve of the punitive damages phase. Therefore, any deficiencies in Sierra's belated motion are equally applicable to Patriot's belated motion in limine. Furthermore, the final pretrial order did not set forth any specific details with respect to the order of discovery, testimony to be elicited, or motions with respect to the punitive damage phase. None of the parties sought clarification and none of the parties objected to the final pretrial order. Therefore, the Court has broad discretion as to how the bifurcated proceedings are conducted, and exercises that discretion to permit both Patriot's and Sierra's belated motions. Moreover, neither Patriot nor Patriot Rail Company LLC has claimed that it lacked notice of Sierra's proposed substitution; therefore the due process concerns protected by Rule 25(a)(3) and 25(c) are not implicated here.

Patriot also argues that Sierra is the culpable party for failing to bring substitution and successor-in-interest issues to the Court's attention earlier. (ECF No. 467 at 3–5.) Patriot further argues that it relied on the final pretrial order that "New Patriot was not relevant." (ECF No. 467 at 7:5–6.) These arguments fail for two reasons. First, the Court excuses the parties' belated motions based on the parties' representations that the irreconcilable issues of the corporate form of Patriot Rail Corporation and Patriot Rail Company LLC did not arise until after the punitive

1   damages phase commenced.  Second, the Court notes that Sierra did raise these issues earlier,
2   albeit in a separate motions, an ex parte application to stop the sale of Patriot to SteelRiver and in
3   a motion to add parties and to serve unserved counter-defendants.  Indeed, in the proceedings
4   regarding the motion to add new parties and serve unserved counter-defendants, Sierra stated its
5   concerns as follows:

- "Patriot's recent disclosure that 100% of its assets have been sold and that two of the entity defendants have changed their name necessitates amendment of the Counter Claim to ensure that any judgment on Sierra's behalf is against the correct entities who are liable." (Mem. P.&A. in Supp. of Mot. for Leave to Amend, ECF No. 266-1 at 8:18–20.)

- "If the unserved parties are dismissed, and those parties are in fact jointly and or [sic] severally liable as Sierra alleges and/or Patriot has shifted its assets to those entities as Sierra suspects, then a dismissal of those parties would bar complete relief or recovery by Sierra on its claims." (ECF No. 266-1 at 13:1–4.)

- "Patriot Rail appears to be a stack of companies, basically held within a shell or a holding company, which is Patriot Rail Corporation.  The companies we seek to add now, Patriot Rail Holdings and Patriot Equity, LLC, fall within that umbrella.  Our concern, however, is that assets or judgments would be properly rendered against those companies, but if they're not added to this we can't go after them, and the assets we seek to recover through the litigation could get moved there, or maybe already have been moved there.  Basically, a shell game could get played with us under all the entities that exist under the holding corporation." (ECF No. 309 at 7:11–21.)

- "MR. PLAMONDON: We're concerned, just given the way the assets have moved around, and passed around in this case, that we could end up in either extensive motion practice postjudgment in this case, or that otherwise assets will be secreted or otherwise transferred ahead of a judgment, or even ahead of trial.  And we're

/ / /

10

just trying to be very cautious and careful, Your Honor, to get all the parties that were holding the assets taken from Sierra Rail." (ECF No. 309 at 11:23–12:5.)

Patriot Rail Corporation filed a response to the motion, and also made representations at the Court's hearing on this issue. The Court's review of Patriot's statements in its briefing and at the hearing include, but are not limited, to the following:

- "To date, however, the issue of the ownership of Patriot stock has not been part of this lawsuit; Patriot Holdings, LLC was never added as a party to this lawsuit. (Resp. to Mot. for Leave to Amend, ECF No. 274 at 6:15–16.)

- Sierra's attempt to include Patriot Funding is nothing more than a backdoor attempt to untimely introduce issues at the last minute. Whether Sierra seeks to add Patriot Holdings, LLC or Patriot Funding, it is adding an issue in this case at a time at which the parties are completing their Joint Pretrial order and trial is imminent. None of the allegations in the operative counterclaim concerning their '*alter-ego*' status have been subject to discovery." (ECF No. 274 at 6:17–21.)

- "THE COURT: Well, counsel, let's cut to the chase here. Isn't it true that the unserved counter-defendants in this case, they've been on notice of this case the entire time? MS. LOVETT: Your Honor, it's true. And they're interested parties in the litigation. But interested parties do not equate to defendants in every instance. And we contend these are improper defendants. They were not part of the operating entities. And to suggest that -- we take offense, quite frankly, Your Honor, that there would be any suggestion there would be a switching or moving of assets. Certainly they would be entitled to postjudgment discovery if, in fact, there is a judgment, to determine whether or not the assets are in the right place. But at this late date, there is no point in saying we need to find other funding sources if this isn't the proper source. If these were important sources, Your Honor, respectfully, they should have made sure they were served. Or they should have taken a default when they didn't answer if they believed, as they now contend, that they were served." (ECF No. 309 at 14:24–15:18.)

11

In light of the past representations, the Court is concerned with Patriot's failure to raise this issue–not Sierra's.  Indeed, the Court has serious concerns about Patriot's motion in limine and consolidated reply which emphatically asserted that Patriot Rail Company LLC was a non-party; Patriot's supplemental brief is a complete reversal of its previous position.[5]  It seems paradoxical, at best, that Patriot needed information from Sierra to discover that Patriot Rail Corporation was the same entity as Patriot Rail Company LLC.

Patriot also argues that changing the names of the parties at the last minute will prejudice it and Patriot Rail Company LLC because "the jury will be left with the false impression that all three Patriot entities have engaged in some type of illicit behavior." (ECF No. 467 at 6:2–4.)  To address Patriot's concern, the Court shall instruct the jury that Patriot Rail Corporation has converted itself from a corporation to an LLC, and that the jury is not to consider the change in form in its consideration of punitive damages.  Furthermore, the Court shall also instruct the jury that they are not to use prejudice or bias in awarding punitive damages, consistent with the Ninth Circuit model instructions and with California law.  *See, e.g.*, Ninth Circuit Model Jury Instruction 5.5 ("Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.").  Contrary to Patriot's footnote that the prejudice flows to Patriot "no matter what instructions [the jury is] given by the Court," (ECF No. 467 at 6 n. 6) the law presumes that jurors follow instructions that they are given.  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270–71 (9th Cir. 2000) ("There is a strong presumption that the curative instructions given by the district court were followed by the jury and therefore we so presume.").  Therefore, the jury shall be instructed consistent with applicable law to protect against any impression that the Patriot entities have engaged in some type of illicit behavior.[6]

---

[5] The Court notes that during punitive damages discovery and at hearing Patriot took the position that Patriot Rail Company LLC was a separate entity, and that Greenberg Traurig did not represent Patriot Rail Company LLC.  The Court requests that Patriot clarify its positions on this point on the first day of the punitive damages phase, on the record and outside of the presence of the jury.

[6] The Court takes no position as to the propriety of the SteelRiver purchase or the conversion of Patriot Rail Corporation to Patriot Rail Company LLC.  The Court merely finds that it would be

1      Patriot argues any punitive damages award against Patriot Rail Company LLC is against
2  public policy because "SteelRiver-managed New Patriot is an innocent successor." (ECF No. 467
3  at 10:20.) This argument is flawed; SteelRiver is not a party to this litigation and no motion is
4  before the Court to introduce evidence of SteelRiver's finances. Rather, the Court is permitting
5  Sierra to introduce evidence of Patriot Rail Company LLC's financial condition.

6      To the extent that Patriot argues that the Court should consider substantive changes that
7  occurred when SteelRiver purchased Patriot Rail Corporation (*see* ECF No. 467 at 10–19), the
8  Court steadfastly declines to do so. Sierra correctly notes Patriot made numerous representations
9  to this Court and to the Surface Transportation Board that the sale of Patriot Rail Corporation to
10 SteelRiver would not change anything with respect to this litigation. Upon the Court's review,
11 the statements that Patriot has made with respect to the SteelRiver transaction include, but are not
12 necessarily limited to the following:

- "[T]he transaction at issue amounts to nothing more than a sale of stock by one entity, Patriot Rail Holding, LLC, to another, SteelRiver Infrastructure Fund North America LP ("SteelRiver"). As Patriot repeatedly explained to Sierra in writing during the meet and confer process, the stock purchase agreement between these entities will have no impact on this litigation or Sierra's pending claims." (ECF No. 231 at 1:8–12.)
- "[R]egardless of the sale of its stock to SteelRiver, Patriot Rail Corp. remains the Plaintiff and Counter defendant in this action, and will continue to own the same assets it now has" (ECF No. 231 at 6:28–7:2.)
- "<u>The Sale Will Have No Impact on Existing Parties or Assets</u>." (ECF No. 231 at 9:22 (underline in original).)
- "Perhaps the most compelling reason to deny Sierra's Application is that the stock sale at issue will have *no impact on the parties to this litigation or the assets at issue*.") (ECF No. 231 at 9:23–24 (italics in original).)

---

inappropriate to have the jury speculate as to why the sale and change in corporate form took place in these proceedings.

13

- "Sierra fails to understand simple corporate law and its Application is premised on the purposeful disregard or erroneous belief that the stock sale to SteelRiver somehow affects this matter. It does not." (ECF No. 231 at 10:1–3.)
- "The purchase price of Patriot Rail Corp.'s stock by SteelRiver from Patriot Rail Holdings LLC is well in excess of $200,000,000.  After the close of the transaction, Patriot Rail Corp. will continue to own and operate all the properties, railroads and assets it owned and operated prior to the transaction, including, without limitation, [Sacramento Valley Railroad LLC].  No separate valuation of any of those individual properties or assets was performed by Patriot or its agents or provided in connection with the transaction.  As in all stock sales, it transfers all assets and liabilities of Patriot Rail Corp." (Marks Decl., ECF No. 231-1 at ¶ 6.)
- "Sierra failed to address or establish that the stock sale will have any impact on this litigation (it will not) . . . ."  (ECF No. 234 at 1:23–24.)
- "MS. LOVETT: . . . And the bottom line is that the transaction changes nothing with respect to this litigation.  Companies are bought and sold while they're in litigation all the time.  None of the assets changed.  This is a stock sale.  Patriot Rail will continue with the McClellan contract.  They will continue to own 13 railroads throughout the country.  It changes nothing with respect to this litigation." (ECF No. 242 at 15:8–14.)
- "[N]or does Sierra show that the Proposed Transaction will irreparably harm Sierra (rather, it attempts to obscure the fact that all entities in the Court Case will remain unchanged after the consummation of the Proposed Transaction)." (ECF No. 464-1, Ex. I at 12.)
- "Only the ownership of Patriot Rail will change.  None of the parties to the Court Case are changing, so nothing that Sierra is concerned about will be different because of the Proposed Transaction (*i.e.*, there will be no harm)." (ECF No. 464-1, Ex. I at 18.)

///

- "In addition, Applicants are not trying to shield Patriot Rail from the Court Case. Patriot Rail is a counter-defendant in the Court Case today. If the Proposed Transaction is consummated, Patriot Rail will continue to be a counter-defendant in the Court Case subject to the rulings of Judge England. Given that nothing will change with respect to the parties in the Court Case as a result of the Proposed Transaction, there are no concerns here like there were in *Riffin Acquisition*, and that case is not valid precedent for considering the Proposed Transaction." (ECF No. 464-1, Ex. I at 23-24.)

- "Sierra seeks to use these inapposite opinions to create the illusion that the Court Case makes the Proposed Transaction non-routine and controversial. The only reason that the Proposed Transaction is non-routine and controversial is because Sierra has decided to try to stop the Proposed Transaction. The Court Case has no effect on the Proposed Transaction and the Proposed Transaction has no effect on the Court Case." (ECF No. 464-1, Ex. I at 25.)

- "Sierra consistently ignores that Patriot Rail is the counter-defendant in the Court Case, and Patriot Rail will remain so following the consummation of the Proposed Transaction. If there is a judgment against Patriot Rail, then Patriot Rail will have to satisfy that judgment, just as would be the case absent the Proposed Transaction." (ECF No. 464-1 at 26.)

- "***Sierra will not suffer irreparable harm absent a stay.*** Patriot Rail is the counter-defendant today and will be the counter-defendant once the Board denies Sierra's stay request and the Proposed Transaction is allowed to proceed. If Sierra prevails, Patriot Rail will have its assets available to satisfy any judgment." (ECF No. 464-1, Ex. I at 29) (italics and bold in original).)

- "Thus, with respect to the Court Case, Sierra is effectively better off and more insulated from potential harm as a result of the Proposed Transaction than it would be absent the Proposed Transaction." (ECF No. 464-1, Ex. I at 30.)

///

15

- "Closing of the Proposed Transaction will not shield Patriot Rail from the counterclaim filed by Sierra in the Court Case." (ECF No. 464-1, Ex. I at 31.)

Given Patriot's repeated and emphatic representations to this Court and to the STB that the SteelRiver transaction would have no effect on this litigation, the Court cannot accept Patriot's position now that the SteelRiver transaction somehow affects the ability of Sierra to introduce evidence of Patriot Rail Company LLC's financial condition during the punitive damages phase. To find otherwise would be profoundly unjust.

**C.    Patriot's Arguments that Any Punitive Damages Award Would Be Against Public Policy**

Patriot argues any punitive damages award in this action is against public policy citing *In re Related Asbestos Cases*, 566 F. Supp. 818 (N.D. Cal. 1983), *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310 (1999), and *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037 (2003). However, these cases are no longer on point in light of Patriot's concession that Patriot Rail Company LLC is a continuation of Patriot Rail Corporation, and thus the same entity. Indeed, the facts of *In re Related Asbestos* would be more appropriately analogous if Sierra wanted to impose liability upon SteelRiver as a successor in interest, a point which Patriot acknowledges. (ECF No. 467 at 11:18–19 ("the successor in *In re Asbestos* purchased all of the outstanding shares of the predecessor (just like SteelRiver in this case)"; ECF No. 467 at 11:28-12:1 ("Under the [Stock Purchase Agreement], SteelRiver bought all of the outstanding shares of Patriot Rail Corp. . . . .").) Accordingly, *In re Asbestos* is inapposite here. Similarly, *PPG Industries, Inc.* and *Ferguson* address imposition of punitive damages on insurers for acts committed by their insured, and upon attorneys for malpractice in representing their clients. As admitted by Patriot, the facts and circumstances are different in those cases, and do not apply where the party remains the same, as is the case here.

Patriot also argues that punitive damages are inappropriate because Mr. Marino, Mr. Wlotko, and Mr. Marks are no longer with Patriot.[7] Patriot cites *Weeks v. Baker & McKenzie*, 63

---

[7] In light of the Court's analysis, it need not decide whether Mr. McCarthy is a managing agent for purposes of imposing punitive damages.

16

1  Cal. App. 4th 1128 (1998), in support but this case is inapposite and contradicts Patriot's position.
2  The Court in *Weeks* affirmed that an employer and an employee's liability for punitive damages
3  are separate, and that punitive damages are only appropriate against the employer entity if the
4  employer is found to have committed a malicious, oppressive, or fraudulent act. *Id.* at 1154
5  ("Civil Code section 3294, subdivision (b) does not authorize an award of punitive damages
6  against an employer for the employee's wrongful conduct. It authorizes an award of punitive
7  damages against an employer for the employer's *own* wrongful conduct.") (italics in original).
8  Here, the jury's verdict is consistent with *Weeks*. The jury found that Patriot Rail Corporation
9  had committed malicious, oppressive, or fraudulent acts, not any one particular officer in their
10 individual capacity. (*See, e.g.*, ECF No. 447 at 6 ("With respect to this claim, do you find that
11 Sierra proved that conduct constituting malice, oppression, or fraud was committed by one or
12 more officers, directors, or managing agents of Patriot").)

13        The Court concludes that determining successor liability for punitive damages is a case-
14 by-case, fact-intensive inquiry. Although the Court can hypothesize cases where successor
15 liability may not be appropriate, that is not the case here. Patriot made repeated representations to
16 this Court (through briefs and during oral argument) and to the Surface Transportation Board that
17 nothing regarding its sale to SteelRiver, the purchase of its stock, or the failure to add interested
18 but non-related entities, would affect Patriot Rail Corporation. Furthermore, at a motion hearing
19 on June 20, 2013, Sierra expressed a concern that Patriot would attempt a shell game involving
20 asset shifting or corporate structure changes in order to avoid liability. Although Sierra did not
21 raise the specific issue of assessing punitive damages, Sierra did represent to the Court in its
22 attempt to prohibit the sale of Patriot and in its motion for leave to amend, that it was concerned
23 that Patriot would engage in moving assets or creating shell corporations necessitating extensive
24 law and motion practice. While Patriot's representations to the Court may have been technically
25 correct, the Court notes that Sierra's concerns were not unfounded given the extensive briefing
26 regarding this issue, the delay of the punitive damages phase, and Patriot's confusing and
27 / / /
28 / / /

1   ultimately abandoned position that it is a separate entity from Patriot Rail Company LLC.[8]  The

2   Court therefore finds that public policy weighs against Patriot's position, not in favor of it.[9]

### III.   CONCLUSION

For the reasons stated on the record and in this order, the Court DENIES Patriot's motion in limine (ECF No. 453).  The Court GRANTS IN PART Sierra's motion for leave to amend its counterclaims (ECF No. 455).  Patriot Rail Company LLC shall be substituted for Patriot Rail Corporation in these proceedings.  Furthermore, Sierra will be permitted to introduce evidence of Patriot Rail Company LLC at the punitive damages phase before the jury subject to the instructions and limitations set forth in this order.  To the extent that Sierra's motion seeks leave to amend its counterclaims to add new parties, the motion is DENIED.  The Court expects that with this ruling the parties shall be ready to proceed with the punitive damages phase without delay on Monday, April 28, 2014.

**IT IS SO ORDERED.**

Dated:  April 25, 2014

_____
Troy L. Nunley
United States District Judge

---

[8] In addition to Patriot completely reversing its representation about its own corporate structure and conceding the issue, other Patriot conduct has come to light during this trial including: (1) Patriot eliciting testimony from a witness, Stanley Wlotko, that he independently computed and derived figures to put in Patriot's bid to McClellan contrary to judicial admissions contained in Patriot's complaint that it derived the information from figures distributed by McClellan to all bidders, and (2) Patriot's refusal to produce documents that it had agreed to produce and then faulting Sierra for its failure to move to compel.

[9] Although not raised in its initial motion in limine, Patriot "renews" its motion for a mistrial. (ECF No. 467.)  The Court is unaware of Patriot's first motion for a mistrial but in any event denies Patriot's motion for a mistrial without prejudice to re-raise its arguments in the motion for a new trial contemplated in its ex parte request for a page-limit extension.  (*See* Ex Parte App., ECF No. 452.)