1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    PATRIOT RAIL CORP.,                    No.  2:09-cv-0009-TLN-AC

12              Plaintiff,

13         v.                                **ORDER**

14    SIERRA RAILROAD CO.,

15              Defendant.

16    AND RELATED COUNTERCLAIMS

17

18         On July 9, 2014, this Court held a hearing on numerous pending motions before the Court

19    including: Plaintiffs and Counter-defendants Patriot Rail Corp./Company LLC[1] and Patriot Rail

20    LLC/ Pacific Rail LLC's[2] (hereinafter collectively referred to as "Patriot")[3] Motion for Judgment

21    on Unfair Competition Claim (ECF No. 496); Defendant and Cross-claimant Sierra Railroad

22    Company's ("Sierra") Motion for Prejudgment Interest (ECF No. 497); Sierra's Opening Brief in

23    Support of its Unfair Competition Claim (ECF No. 498); Sierra's Opening Brief in Support of

24

25    [1]    The entity Patriot Rail Corporation is now named Patriot Rail Company, LLC.  To avoid any confusion, the
      Court refers to the company throughout this order as Patriot Rail Corp./Company LLC.
26    [2]    The entity Patriot Rail LLC is now named Pacific Rail LLC.  Thus in an effort to avoid any confusion, the
      Court refers to the company throughout this order as Patriot Rail LLC/ Pacific Rail LLC.
27    [3]    Because Patriot Rail Corp./Company LLC and Patriot Rail LLC/ Pacific Rail LLC have jointly filed the
      aforementioned motions, the Court will address many of the arguments in this order as it applies to both parties
28    jointly.  However, the Court later addresses each entity separately in the "Financial Condition" section of the Court's
      exemplary damages analysis.

                                              1

1   Exemplary Damages (ECF No. 499); Patriot's Motion to Strike Evidence Used in Support of

2   Sierra's Opening Briefs on Post-Verdict Claims (ECF No. 505); and Patriot's Motion to Strike

3   Declarations of Forrest Vickery and Michael Hart (ECF No. 516).  At the hearing the Court

4   granted Patriot's Motion for Judgment on Sierra's Unfair Competition Claim.  (Mins. for Mot.

5   Hrn'g, ECF No. 517.)  The Court submitted the rest of the outstanding matters and thus decides

6   those matters as follows.

7           **I.**       **Sierra's Motion for Prejudgment Interest**

8          On March 28, 2014, a jury awarded Sierra compensatory damages in the amount of

9   $22,282,000 for breaching a non-disclosure agreement (the "NDA") between the parties.  (Jury

10  Verdict, ECF No. 447.)  Sierra has moved this Court to award prejudgment interest in the amount

11  of $1,638,228.  (ECF No. 497-1 at 2.)  Prejudgment interest is mandatory where a party is entitled

12  to damages that were "certain, or capable of being made certain by calculation."  Cal. Civ. Code §

13  3287(a).  However, where, as here, the contract damages are "unliquidated" in the sense of being

14  subject to dispute as to their amount, Cal. Civil Code Section 3287 allows courts to use their

15  discretion in deciding whether to award prejudgment interest.  *Faigin v. Signature Grp. Holdings,*

16  *Inc.*, 211 Cal. App. 4th 726, 751 (2012).  The statute states:

17
18   > Every person who is entitled under any judgment to receive
   > damages based upon a cause of action in contract where the claim
   > was unliquidated, <u>may</u> also recover interest thereon from a date
   > prior to the entry of judgment as the court may, in its discretion, fix,
19   > but in no event earlier than the date the action was filed.

20  Cal. Civ. Code § 3287(b) (emphasis added).  "An award of prejudgment interest is not

21  automatic."  *Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69

22  (2001) (citing *N. Oakland Med.Clinic v. Rogers*, 65 Cal. App. 4th 824, 829 (1998)).  Instead, §

23  3287(b) allows the trial court to award such interest in situations where concerns for fairness to

24  the debtor dictate such an award.  *Id.*

25         In exercising its discretion, the Court hereby declines to award Sierra prejudgment

26  interest.  Due to the procedural posture of this case, granting Sierra's request would entail

27  awarding close to six years of interest.  This matter was originally filed on December 31, 2008.

28  In March of 2009, the Court set the case for trial in February 2011.  (ECF No. 20.)  Patriot

1    correctly points out that at the time this case was filed, the median time interval for disposition of

2    a civil case by trial was 27.4 months.  (*See* Patriot's Opp'n, ECF No. 501 at 3 (citing U.S. District

3    Courts—Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District

4    and Method of Disposition, During the 12-Month Period Ending March 31, 2009, table C-5 at

5    62).)  The Court originally gave this case a trial date that was twenty-six months from date of

6    filing, which is below the median time.  The case was reset multiple times, beginning with a reset

7    from February 2011 to March 2012.  (ECF No. 37.)  The Court then, sua sponte, continued trial

8    first to July 2012 (ECF No. 185), then to February 2013 (ECF No. 224), and later to July 1, 2013

9    (ECF No. 245).  The July 2013 trial setting was again vacated when Judge England transferred

10   this matter to the undersigned on April 3, 2013 (ECF No. 273), and trial was reset by agreement

11   of the parties to March 10, 2014.  Most of the delays in this matter were due to the Court's case

12   load and thus are not attributable to either of the parties.[4]  Accordingly, the Court declines to

13   invoke its discretion to award Sierra prejudgment interest.[5]

14              **II.     Sierra's Request for Exemplary Damages[6]**

15              On March 28, 2014, a jury found that Patriot misappropriated Sierra's trade secrets.  (Jury

16   Verdict, ECF No. 447.)  Sierra is seeking an exemplary damages award of $44.56 million against

17   Patriot Rail Corp./Company LLC and $15 million against Patriot Rail LLC/ Pacific Rail LLC for

18   Patriot's misappropriation of Sierra's trade secrets under the California Uniform Trade Secrets

19   Act ("CUTSA").  (ECF No. 499.)  Patriot opposes Sierra's request contending that the conduct

20   Sierra seeks to punish under its trade secrets claim has already been punished by the jury's

21   exemplary damage award as to its intentional interference claim.  (Patriot's Opp'n, ECF No. 503

22   at 4–8.)  For the reasons stated below, the Court disagrees and finds that an award for exemplary

23

24   [4]        Eastern District judges carry one of the heaviest caseloads in the nation, twice the number as most judges.
     [5]        Because the Court has declined to award prejudgment interest, Patriot's motions to strike Exhibits I (the
25   expert report of Forrest Vickery) and J (the demonstrative summarizing portions of the report) (ECF No. 505), as
     well as Patriot's Motion to Strike Declarations of Forrest Vickery and Michael Hart (ECF No. 516) are hereby
26   DENIED AS MOOT.
     [6]        The terms "exemplary damages" and "punitive damages" are used interchangeably in this Order, which is
27   consistent with their usage in California courts, *e.g., Van Sickle v. Gilbert*, 196 Cal. App. 4th 1495, 1520 (2011)
     ("'[n]o claim for exemplary [i.e., punitive] damages shall state an amount'" (quoting Cal. Civ. Code § 3295(e)), and
28   consistent with the fact that California courts apply punitive damages case law when determining exemplary damages
     in trade secrets cases).

1    damages is warranted.

2           Punitive damages are not designed to compensate the plaintiff but rather to punish the

3    defendant and deter the defendant and others from committing similar acts.  *See State Farm Mut.*

4    *Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *Ferguson v. Lief, Cabraser, Heimann &*

5    *Bernstein, LLP*, 30 Cal. 4th 1037, 1046 (2003).  When claims overlap, it is appropriate to punish a

6    defendant's conduct only once.  *See Chopourian v. Catholic Healthcare W.*, No. CIV S-09-2972

7    KJM, 2012 WL 1551728, at *4 (E.D. Cal. Apr. 30, 2012).  However, where the claims do not

8    overlap, a plaintiff is entitled to the punitive damages separately assigned to those claims.  *Id.*

9    (finding that plaintiff was due punitive damages on both her defamation and intentional

10   interference claim because the two claims did not overlap).

11          In the instant case, the elements for the two claims are different.  For example, in order to

12   find for Sierra on its intentional interference claim, the jury was required to find that:

13                  1.  Sierra and McClellan Business Park were in an economic
                     relationship that probably would have resulted in an economic
14                   benefit to Sierra;

15                  2.  Patriot knew of the relationship;

16                  3.  Patriot engaged in wrongful conduct by making intentional
                     and/or negligent misrepresentations to Sierra with respect to
17                   McClellan Business Park;

18                  4.  By engaging in this conduct, Patriot intended to disrupt the
                     relationship;
19
                    5.  The relationship was disrupted;
20
                    6.  Sierra was harmed; and
21
                    7.  Patriot's conduct was a substantial factor in causing Sierra's
22                   harm.

23   (Jury Instruction No. 43, ECF No. 442).  In contrast, in order for the jury to find Patriot liable for

24   misappropriation of trade secrets, the jury was required to find that:

25                  1.  Sierra owned any or all of the following information:

26                        a)  Current and potential future customer information;

27                        b)  Operational information, including performance reports
                         and financial/income and revenue reports;
28

                                           4

1
2

      c)  Service pricing information, including customer carload data, service marketing projections and plans, and profit and cost sharing information;

3
4

      d)  Site design information, including site specification, site plans, and expansion plans; and

5

      e)  Future strategy and planning information, including its knowledge of the McClellan Business Park operations;

6

  2.  This information was a trade secret at the time it was used by Patriot;

7
8

  3.  Patriot improperly acquired or used any one of these trade secrets;

9

  4.  Sierra was harmed or that Patriot was unjustly enriched; and

10

  5.  Patriot's acquisition or use was a substantial factor in causing Sierra's harm or Patriot to be unjustly enriched.

11

12  (Jury Instruction No. 32, ECF No. 442.)  The two claims are based on different facts and legal

13  elements.  The fact that there is some overlap in the area of causation or harm does not suffice to

14  make these causes of action based on "identical conduct," as Patriot claims.  *See Mason v.*

15  *Oklahoma Tpk. Auth.*, 115 F.3d 1442, 1460 (10th Cir. 1997) (holding that an award of punitive

16  damages for both a § 1983 claim and a wrongful discharge claim "may not be duplicative at all,

17  but may instead represent the jury's proper effort to punish and deter all the improper conduct

18  underlying the verdict [including the violation of federal law and state public policy]"), *overruled*

19  *on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir.

20  2011); *see also Mockler v. Multnomah Cnty.*, 141 F.3d 1177, at *5 (9th Cir. 1998) (unpublished)[7]

21  (adopting and applying the holding in *Mason* and thus rejecting an argument that awards were

22  duplicative, instead finding that the jury's intent to punish the defendant for his disregard of both

23  federal law and state policy was proper).  As such, the Court finds that an award of exemplary

24  damages for Sierra's misappropriation of trade secrets claim would not be duplicative and

25  therefore must ascertain the appropriate amount to be awarded.

26       California Civil Code Section 3426.3(c) provides:

27

[7]  The Court notes that this case is unpublished and thus is not binding precedent.  *See* Ninth Circuit Rule 36-3.  Accordingly, the Court cites this case only for the purpose of hypothesizing the likelihood of the Ninth Circuit

28  adopting the rationale put forth in *Mason*.

1

2

3

4

5

6

7

(a)  A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b)  If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c)  If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

8

9   To determine the proper measure of exemplary damages within CUTSA's statutory range,

10   California courts consider common law factors traditionally used to determine both whether and

11   to what extent exemplary damages are warranted.  *Cloud & Assocs., Inc. v. Mikesell*, 69 Cal. App.

12   4th 1141, 1151–53 (1999); *02 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d

13   1064, 1079 (N.D. Cal. 2005).  Those factors are: (1) the nature of the misconduct; (2) the amount

14   of compensatory damages; and (3) the defendant's financial condition.  *See Neal v. Farmers Ins.*

15   *Exch.*, 21 Cal. 3d 910, 928 n.13 (1978); *Adams v. Murakami*, 54 Cal. 3d 105, 111 (1991).  For the

16   reasons set forth below, the Court finds that the factors weigh in favor of awarding Sierra

17   exemplary damages.

18          *A.     Nature of the Misconduct*

19                  At the outset, the Court notes that the jury already found Patriot's conduct in this

20   matter was willful and malicious.  (ECF No. 447.)  The Supreme Court has instructed courts to

21   determine the reprehensibility of a defendant by considering whether: "(1) the harm caused was

22   physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless

23   disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability;

24   (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the

25   result of intentional malice, trickery, or deceit, or mere accident."  *State Farm*, 538 U.S. at 419

26   (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  Evidence of all factors is not

27   required.  *See*, *e.g.*, *Sun Pacific Farming Co-op., Inc. v. Sun World Int'l., Inc.*, No. 1:01-cv-6102

28   OWW CCC, 2009 WL 900751, at *7 (E.D. Cal. Mar. 31, 2009) (awarding punitive damages on

1   the basis that the fifth factor alone—evidence of intentional and malicious conduct—was

2   present); *Mobile Mini, Inc. v. Khordt*, No. CIV S-05-2458 FCD DAD, 2007 WL 2109224, at *5

3   (E.D. Cal. July 23, 2007) (finding that even though there was no evidence of the first three sub

4   factors, the "remaining subfactors favor a high-end punitive damages award because defendant's

5   conduct involved repeated actions and was the result of intentional trickery and deceit").

6   However, the absence of all of the aforementioned factors renders any award suspect. *State Farm*,

7   538 U.S. at 419.   Here, the applicable factors are the third, fourth, and fifth factors.

8                      i.        Factor Three: Whether the Target of the Conduct had Financial

9                                Vulnerability

10          Patriot was well aware of Sierra's financial vulnerability due to its negotiations to acquire

11  Sierra.  The parties began negotiations in the summer of 2007 because Sierra needed financial

12  backing to renegotiate a long-term contract with McClellan.  (Excerpts of Trial Tr., ECF No. 500-

13  1 at 997:22–998:6, 1030:22–1033:13.)  In addition to Patriot having access to all of Sierra's

14  financial information (ECF No. 500-1 at 997:24–998:18), Patriot also knew Sierra needed to raise

15  capital to launch a prototype of Sierra Energy's cutting-edge clean energy technology.  (ECF No.

16  500-1 at 996:22–997:6, 1024:12–19, 1027:7–25.)  After obtaining Sierra's confidential

17  information, which Patriot later used to outbid Sierra, Patriot tried to exploit Sierra's financial

18  situation by making a low-ball purchase offer on September 10, 2007.  Patriot offered $7.2

19  million for all of Sierra's rail business (freight and entertainment) when the parties had previously

20  been discussing $15 million or more for the freight business alone.  (ECF No. 500-1 at 1075:11–

21  1076:15.)  Throughout the trial, Patriot never provided a plausible explanation as to why the offer

22  changed so drastically.  This conduct alone clearly demonstrates Patriot's awareness of Sierra's

23  financial vulnerability.  However, Patriot's exploitation of Sierra's vulnerability did not stop

24  there.  After Sierra rejected Patriot's offer, Stan Wlotko[8] used Sierra's confidential information,

25  including Sierra's June 13, 2007 proposal to McClellan, to outbid Sierra for the McClellan

26  contract.  (ECF No. 500-1 at 1022:11–25; 1027:11–1028:2.)  Thus, it is clear that Patriot was

27

28  [8]    Stan Wlotko was a high-level executive at Patriot, who was in charge of authoring the bid for the McClellan contract.

7

1    aware of Sierra's financial vulnerability and wrongfully used this awareness despite the NDA.

2    Accordingly, the Court finds that the third factor weighs in favor of awarding exemplary

3    damages.

4                    ii.      Factor Four: Whether the Conduct Involved Repeated Actions

5            Patriot's conduct also implicates the fourth factor because "the conduct involved repeated

6    actions." *State Farm*, 538 U.S. at 419.  In the course of bidding on the McClellan contract,

7    Patriot continuously breached the NDA by using Sierra's information in formulating a proposal

8    that would enable it to outbid Sierra.  Moreover, it continually misled Sierra as to its intention.

9    For example, Patriot told Sierra that any proposal Patriot submitted to McClellan would be a

10   "second bite at the apple" on behalf of Sierra.  (ECF No. 501 at 1058:12–14, 1060:20–24.)

11   Again, on August 16, 2007, Mr. Wlotko assured Sierra's president and CEO, Michael Hart, that

12   there was "absolutely no way" Patriot would take any action at McClellan without Sierra because

13   the NDA prohibited it.  (ECF No. 500-1 at 1041:24–1042:5.)  Less than two weeks later, on

14   August 28, Gary Marino, Patriot's former CEO, chairman, and president, reiterated Mr. Wlotko's

15   assurance.  (ECF No. 500-1 at 1058:12–14.)  Thus, the Court finds that Patriot's conduct involved

16   repeated misrepresentations to Sierra.

17                   iii.     Factor Five: Whether the Harm was the Result of Intentional Malice,

18                            Trickery, or Deceit, or Mere Accident

19           As to the fifth factor, the jury has already found that Patriot's conduct was willful and

20   malicious.  (ECF No. 447.)  This Court wholeheartedly agrees.  As addressed in the Court's

21   analysis under the fourth factor, Patriot repeatedly misled Sierra.  In fact, not only did Patriot

22   secretly bid using Sierra's confidential information, it also tricked Sierra into bidding less.  Mr.

23   Marino suggested to Mr. Hart that he lower Sierra's $1–1.2 million capital investment offer to

24   McClellan because it was "too high" and would "cost [Sierra] in the purchase price."  (ECF No.

25   500-1 at 1059:6–19.)  Based on Marino's suggestions, Sierra reduced its offer to $500,000, while

26   Patriot offered $1 million.  (ECF No. 500-1 at 1059:6–19.)  Patriot never retracted or corrected

27   these misrepresentations, even after submitting its own bid on November 15.  (ECF No. 1083:17–

28   1084:15.)  Patriot's actions were done purposely, which was evidenced by Patriot's own witness

1  and vice president in charge of business development, Paul McCarthy, who testified that Patriot

2  viewed Sierra as a "threat" and Patriot's target was now McClellan.  (ECF No. 500-1 at 1950:20–

3  23, 1953:4-5, 1985:20–1986:2, 1995:7–8.)  Based on these factors, the Court finds that the nature

4  of the conduct weighs in favor of awarding exemplary damages.

5          *B.      The Amount of Compensatory Damages*

6          "[T]he California Supreme Court has made clear that compensatory damages and

7  exemplary damages should share a direct relationship."  *Mattel, Inc. v. MGA Entm't, Inc.*, 801 F.

8  Supp. 2d 950, 955 (C.D. Cal. 2011), *vacated on other grounds*, 705 F.3d 1108 (9th Cir. 2012)

9  (citing *Neal*, 21 Cal. 3d at 928 (awarding $85 million in exemplary damages—an amount equal to

10  the compensatory damages—in a California trade-secret misappropriation case)).  Large

11  compensatory damages awards warrant proportionally larger exemplary damages awards.  *See*

12  *State Farm*, 538 U.S. at 425 (acts of bad faith and fraud warranted something closer to a 1 to 1

13  ratio); *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d

14  949, 962 (9th Cir. 2005) (holding that in cases where there are significant economic damages and

15  punitive damages are warranted but behavior is not particularly egregious, a ratio of up to 4 to 1

16  serves as a good proxy for the limits of constitutionality); *Zhang v. Am. Gem Seafoods, Inc.*, 339

17  F.3d 1020, 1043–44 (9th Cir. 2003) (post-*State Farm* case upholding 7 to 1 ratio where the

18  wrongful conduct involved significant racial discrimination).

19          Here, the Court has the discretion to award exemplary damages up to twice the amount of

20  compensatory damages awarded for misappropriation of trade secrets.  *See* Cal. Civ. Code §

21  3426.3(c).  Because the jury awarded $22,282,000 in compensatory damages under the trade

22  secret claim, the maximum amount of exemplary damages is $44,564,000.[9]

23          *C.      Patriot's Financial Condition*

24          "The purposes of punitive damages are to punish the defendant and to make an example of

25  him, 'the wealthier the wrongdoing defendant, the larger the award of exemplary damages need

26

27  [9]      Sierra's briefing asks this Court to award punitive damages of $44,564,000 against Patriot Rail Corp. and
$15,000,000 against Patriot Rail LLC.  (ECF No. 499 at 2.)  The Court declines at this juncture to address Sierra's
argument that Patriot Rail LLC should pay $15,000,000 in punitive damages because the Court subsequently finds

28  that Patriot Rail LLC is unable to pay the requested amount.  *See infra* Section C.

1   be in order to accomplish the statutory objective.'" *Devlin v. Kearny Mesa AMC/Jeep/Renault,*

2   *Inc.*, 155 Cal. App. 3d 381, 390 (1984) (quoting *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 65

3   (1974)).  The California Supreme Court has emphasized that exemplary damages must be large

4   enough that a wealthy defendant cannot "absorb the award with little or no discomfort."  *Neal*, 21

5   Cal. 3d at 928.  However, the award cannot be so large that it would destroy the defendant: "[T]he

6   purpose of punitive damages is not served by financially destroying a defendant.  The purpose is

7   to deter, not to destroy."  *Adams*, 54 Cal. 3d at 112.

8           The parties disagree as to the appropriate value of Patriot Rail Corp./Company LLC and

9   Patriot Rail LLC/Pacific Rail LLC.  Patriot argues that the "shareholder's equity in Patriot Rail

10  Corp. [/Company LLC] as of the time of the Phase II trial was $160,214,000."  (ECF No. 503 at

11  26.)  Sierra contends that the equity is much higher. [10]  At the very minimum, the Court finds that

12  the shareholder's equity of Patriot Rail Corp./Company LLC was $167,682,661 as of April 2,

13  2014, two days before the punitive damages phase of trial was originally scheduled to occur.  (*See*

14  testimony of Patriot Rail Company LLC's designated witness regarding its financial condition,

15  Ms. Jennifer Whiteman, ECF No. 500-1 at 2503:2-10.)  Accordingly, the Court finds this amount

16  to be the appropriate number for determining Patriot Rail Corp./Company LLC's ability to pay.

17          There is no bright line rule in determining the reasonableness of an award for punitive

18  damages.  *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18–19 (1991) ("We need not, and

19  indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and

20  the constitutionally unacceptable that would fit every case.")  California courts have found that an

21  exemplary damage award of 17.5% of a company's value to be sufficient to punish extremely

22  reprehensible conduct.  *See Devlin*, 155 Cal. App. 3d at 391.  Due to the reprehensible conduct in

23  this case, the Court finds such a percentage to be appropriate.

24          The parties have not presented, nor is this Court aware of any precedent that would

25  support this Court considering the appropriateness of this punitive damage award independently

26  _____

27  [10]     The parties presented multiple arguments to the Court as to whether eighty-million dollars ($80,000,000)
    that was passed from Patriot to Steelriver was in fact a dividend.  Sierra asserts that this fact supports their request for
    an award of $44,564,000.  The Court is not convinced that the payment is in fact a dividend, but because the issue is
28  not determinative as to Patriot's ability to pay, the Court declines to decide this issue.

1    from the punitive damages already awarded by the jury on Sierra's intentional interference claim

2    (i.e. awarding 17.5% of Patriot's equity in addition to the $16.2 million dollar jury award).

3    Therefore, it is this Court's understanding and intention that any punitive damages awarded on

4    Sierra's misappropriation claim would be in addition to the existing $16.2 million awarded by the

5    jury.  In fact, the Court is persuaded that the "ability to pay factor" imposed by California courts

6    indicates that the Court should take into consideration the total punitive award against a given

7    party in determining the award that would adequately punish the party.  *See Mason*, 115 F.3d at

8    1460 (upholding multiple punitive damage awards where the awards punished different conduct);

9    *see also Neal*, 21 Cal. 3d at 928 ("Also to be considered is the wealth of the particular defendant;

10   obviously, the function of deterrence will not be served if the wealth of the defendant allows him

11   to absorb the award with little or no discomfort"); *Cnty. of San Bernardino v. Walsh*, 158 Cal.

12   App. 4th 533, 546 (2007) ("The purpose of punitive damages is not served by financially

13   destroying a defendant.  The purpose is to deter, not to destroy.  In all cases, the plaintiff has the

14   burden of proving the financial condition of the defendant.").  Thus, this Court has found that the

15   total appropriate punitive damage award is 17.5% of Patriot Rail Corp./Company LLC's equity

16   ($167,682,661), thus equaling $29,344,465.  Because the jury has already awarded $16,200,000

17   in punitive damages for Sierra's intentional interference claim (*see* Jury Verdict, ECF No. 485),

18   the Court will deduct the $16,200,000 in punitive damages already awarded from the total

19   $29,344,465 of punitive damages to be awarded.  Therefore, the Court hereby orders Patriot Rail

20   Corp./Company LLC to pay Sierra $13,144,465 in punitive damages on Sierra's misappropriation

21   of trade secrets claim.  In sum, the award of punitive damages for both the intentional interference

22   claim and the misappropriation of trade secrets claim is $29,344,465.

23           As to Patriot Rail LLC/Pacific Rail LLC, it is undisputed that the company's current net

24   worth is $1.3 million.  However, Patriot Rail LLC/ Pacific Rail LLC owns 87.5 % of the

25   subsidiary Patriot Rail Holdings, LLC.  Sierra contends that this Court should consider the value

26   of Patriot Rail Holdings, LLC and the fact that in 2012, during the pendency of this action, Patriot

27   Rail Holdings LLC made distributions to its shareholders of more than $80 million. (ECF No.

28   499 at 26.)  In doing so, Sierra relies on the deposition of Patriot Rail LLC's CFO and designated

1  financial condition witness Bennett Marks, as well as the 2012 and 2013 Tax Returns for Pacific

2  Rail, LLC FKA Patriot Rail, LLC.  In its motion to strike (ECF No. 505), Patriot argues that

3  evidence of these transactions is inadmissible because the Court excluded this evidence from the

4  jury.  The Court agrees.  It would be inconsistent with the Court's earlier ruling to now consider

5  evidence that was not before the jury.  Thus, the Court GRANTS Patriot's Motion to Strike

6  Exhibits B, F and G (ECF No. 505).

7       Although Patriot Rail LLC/ Pacific Rail LLC's current net worth is $1.3 million, this

8  figure does not take into consideration the jury's award of punitive damages on Sierra's

9  intentional interference claim.  The jury has already awarded Sierra $1.2 million dollars from

10  Patriot Rail LLC/ Pacific Rail LLC.  This leaves a net worth of $100,000 and thus no ability to

11  pay.  Accordingly, the Court finds that an exemplary award against Patriot Rail LLC/ Pacific Rail

12  LLC for misappropriation of trade secrets is not warranted.

13       **III.    CONCLUSION**

14       The Court has considered the above factors and hereby awards Sierra $13,144,465 in

15  exemplary damages on its misappropriation of trade secrets claim.  The Court finds that this

16  award reflects the willful and malicious nature of Patriot's conduct, that it is appropriate in

17  relation to the compensatory damages awarded, and that it suffices to punish Patriot without

18  financially destroying it.  For the foregoing reasons the Court hereby orders:

19       1.    Sierra's Motion for Prejudgment Interest (ECF No. 497) is DENIED;

20       2.    Accordingly, Patriot's motions to strike Exhibits I and J, the expert report of

21             Forrest Vickery and the demonstrative summarizing portions of the report (ECF

22             No. 505) and Motion to Strike Declarations of Forrest Vickery and Michael Hart

23             (ECF No. 516) are DENIED AS MOOT;

24       3.    Patriot's Motion to Strike Exhibit B, F and G (ECF No. 505) is GRANTED;

25       4.    Sierra's Motion for Exemplary Damages (ECF No. 498) is GRANTED IN PART

26             and DENIED IN PART.  The Court hereby awards Sierra $13,144,465 in

27             exemplary damages on its misappropriation of trade secrets claim against Patriot

28             Rail Corp./Company LLC.  This amount is separate and apart from the jury's

1    punitive damages verdict on the interference claim (which was $16,200,000

2    against Patriot Rail Corp./Company LLC and $1,200,000 against Patriot Rail LLC/

3    Pacific Rail LLC).  (ECF No. 482).  Because the Court is unconvinced as to Patriot

4    Rail LLC/ Pacific Rail LLC's ability to pay further punitive damages, the Court

5    declines to award additional exemplary damages against it.

6

7        **IT IS SO ORDERED.**

8    Dated:  October 22, 2014

9

10

11

12    Troy L. Nunley
      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28